15839

THE STATE OF SOUTH CAROLINA v. FORD MOTOR CO.

(38 S. E. (2d), 242)

*Messrs. Cansler & Cansler,* of Charlotte, N. C., *Robinson & Robinson* and *C. T. Graydon,* all of Columbia, for appellant,

*Attorney General John M. Daniel, Assistant Attorneys General T. C. Callison* and *M. J. Hough* and *Messrs. Nelson, Mullins & Grier,* all of Columbia, and *Mr. Thomas M. Boulware,* of Allendale, for respondent,

May 16, 1946.

MR. ASSOCIATE JUSTICE STUKES delivered the unanimous Opinion of the Court.

This action is for the recovery in behalf of the State of South Carolina of the penalties which are imposed under the terms of section 7769 of the Code of 1942, recoverable of a foreign corporation (doing business in the state) failing to file the papers required and to pay the fees provided by the terms of the five preceding sections of the Code, the contents of which will be more fully referred to hereinafter. The prayer was for the amount of $7,300.00, being the aggregate of a daily penalty of $10.00 for the two years next preceding the commencement of the action.

The defendant, now appellant, first specially appeared, objecting to the jurisdiction of the court and moving to set aside the service of the summons and complaint which was upon the Secretary of State, pursuant to the statute (Code Section 7765) applicable when the defendant failed to file the appointment of a process agent. It was alleged in the appearance that Ford Motor Company is a Delaware corporation and has never incorporated or domesticated in South Carolina; that it has no property in the state and is not doing business therein; that the statute, insofar as it applies to the defendant, a foreign corporation allegedly not doing business in the state, is violative of the commerce clause and the due process clause of the Federal Constitution and the Fourteenth amendment thereof.

It was stipulated by the parties that the standard Ford dealer contract (form No. 925) was in force between the defendant and eighty Ford dealers who were located in the principal cities and towns of the state at the date of the commencement of the action and for two years prior thereto, and also five Ford distributor agreements (on form 938) with dealers or distributors in the five principal cities of the state; that when the action was commenced the Ford dealer in the city of Columbia had in his possession and ownership one hundred and five passenger cars, fifteen commercial cars and forty-five trucks and that said dealer maintained a service

and repair shop and kept on hand a stock of Ford parts and accessories, purchased from the defendant; as well as other parts and accessories purchased from others, and the other Ford dealers in South Carolina likewise owned at the commencement of the action varying numbers of automobiles and trucks which were manufactured and sold to them by defendant, and paid for, prior to April 1, 1942, as well as parts and accessories; that in January, 1942, the Office of Production Management of the United States, thereafter succeeded by the Office of Price Administration, prevented by order the sale or delivery of any new automobiles or trucks except to the armed forces and certain other governmental agencies or holders of duly issued "ration" certificates; that under such restrictions Ford dealers were continuing to make retail sales of Ford products, issuing therewith the standard warranty of the Company, form 7409; that prior to the rationing of new vehicles Ford dealers in the state were required to make ten-day reports of their activities and prospects on company form 2708, but after rationing monthly reports were substituted for the former ten-day reports and many dealers failed to comply; that the affidavits of J. J. Donovan and C. E. McAlister filed by the defendant in the case of *Thompson v. Ford Motor Company,* 200 S. C., 393, 21 S. E. (2d), 34, and the sales agreement with Gavin & Co., in that case, be filed, as also the affidavit of Q. G. Thompson and the letters from the service department of the Charlotte Branch of Ford Motor Company to Thompson, dated April 1, 1941, and May 5, 1941, and also the copy of the sales agreement between the defendant and Wiggins & Son, Inc., which was filed by defendant in the case of that corporation against Ford Motor Co., 181 S. C., 171, 18 S. E., 272.

The affidavit filed by B. J. Craig was that he is and has been since 1919 Secretary of Ford Motor Company and familiar with its affairs; that it is incorporated under the laws of Delaware with its principal place of business in Dearborn, Michigan, and has never been incorporated or domesticated in South Carolina or had an office, place of

business or property in this state, and was not doing business therein; but before the war emergency it was manufacturing and selling automobiles, trucks and parts therefor at wholesale to dealers, including South Carolina dealers, the sales to the latter having been made through the branch of the company located at Charlotte, North Carolina, by delivery to the purchasers there or by shipment thence or from its Norfolk, Virginia, branch, in interstate commerce; that, however, due to the war it discontinued.manufacturing automobiles and trucks prior to April 1, 1942, except for the United States, and at the time of the commencement of the action was selling its dealers only service parts for use in repair and servicing of the cars of dealers' customers, and that such limited sales were made by the Charlotte Branch in interstate commerce.

The affidavit of C. A. Burgdorf, also filed and received in evidence, was to the effect that he was assistant manager of the Charlotte Branch of the defendant and familiar with its business; that the company has no office, place of business or property in South Carolina and was, and is, doing no business therein; that the sales of parts to South Carolina dealers had dropped to fifty per cent. of the normal volume from the effects of the war emergency; that before such the territory of the Charlotte Branch was divided into zones, including a number in South Carolina, and a traveling representative of the branch was assigned to each zone with the duty of regularly visiting the dealers in such zone for the purpose of advising them as to sales and service methods and of similar activities, but such activity had been reduced by the war and at the time of the making of the affidavit (August 14, 1942), quoting, "The only representatives of the company who were contacting dealers and other persons in South Carolina were (1) the affiant, (2) the service manager and (3) the sales manager of the Charlotte Branch, each of whom makes periodic trips to South Carolina to call on the military authorities at the various military camps and posts for the purpose of advising with reference to the servicing of Ford vehicles in use at such posts, *and to call on*

*dealers for the purpose of advising them with reference to methods of building up their parts and service departments."* (Emphasis added.)

The form of the Ford dealer agreement is similar to that involved in the *Thompson case,* 200 S. C., 393, 21 S. E. (2d), 34, where it was extensively reviewed and analyzed by the court and need not be again for the purpose of this opinion. Instead, the opinion in that case is adopted as an integral part of this, including the facts there found which are relevant here.

However, apparently not before the court in the *Thompson case,* is a specimen contract, form 938, of the company with its "parts distributors" in the state, through which an intrastate wholesale or jobbing business of "genuine Ford parts" is conducted by the distributors. These dealers in the larger cities agree to carry an additional stock of parts and accessories for distribution at wholesale, at prices established from time to time by the company, after purchasing them at similarly, periodically established prices. It contains provision for cancellation by either party by written notice to the other, with re-sale of the stocks on hand to the company, in acord with the regular dealer agreement. For details of the latter, see report of the *Thompson case* again, 200 S. C., 393, 21 S. E. (2d), 34.

Before the Court also was a form of the "Authorized Ford Dealer's Service Policy" which provides free inspection of new vehicles sold and serviced at three hundred miles and one thousand miles of use, with provision that if the purchaser be distant from the dealer from which he purchased he is entitled to obtain the "free" inspection and service from any "Authorized Ford Dealer", whose charge will be refunded by the selling dealer. Reference is made to the warranty and the selling dealer or nearby dealer is obligated to replace without charge parts and furnish labor for repairs thereunder.

The warranty is by the Ford Motor Company and against defective workmanship or material for a period of ninety days or four thousand miles of driving, and obligates the

company to replace the parts without charge, except for transportation. The ten-day report of dealer to company is of the completed sales during the period and during the year, by models, and unsold vehicles on hand, with other information. It is needless to review the other exhibits, or the affidavits and correspondence which were before the Court in the *Thompson case* and were summarized in the opinion in it, 200 S. C., 393, 21 S. E. (2d), 34.

The motion to quash the service was heard by the Honorable G. Duncan Bellinger, Circuit Judge, who properly deemed himself bound by the decision of this Court in the *Thompson case* and refused to quash the service by order dated July 23, 1943. Notice of appeal was served and the prosecution of the appeal reserved until after final judgment.

The defendant thereupon answered with a general denial and the defenses that it is not engaged in business in South Carolina but that the sale of its products is conducted from its Charlotte (North Carolina) Branch in interstate commerce; that the war had interrupted its manufacture and sale to dealers, with which its only present contacts are to give advice as to the building up of their service departments, all of which is incidental to its interstate activities. The answer is in considerable detail and contains the allegations of fact recited in the affidavit of their assistant branch manager, fully set forth and quoted from above; further that defendant relied upon the decision in 1936 in the case of *Wiggins v. Ford Motor Co.,* 181 S. C., 171, 186 S. E., 272, that its transactions in South Carolina constituted interstate commerce and not doing business in South Carolina, certainly until the filing of the decision in the *Thompson case,* 200 S. C., 393, 21 S. E. (2d), 34, on June 15, 1942, and plaintiff is without right to recover the penalty alleged to have accrued prior to the latter date; further defenses were made that the requirement of the payment of the penalties would unlawfully burden interstate commerce and deprive defendant of its property without due process of

law, etc., in violation of the Constitution of the United States.

Prior to the hearing on the merits before the Honorable T. S. Sease, Trial Judge, the parties agreed that their stipulation and all of the exhibits before the court on the motion to quash the service should be submitted as evidence, except that defendant's objection as to the relevancy of the affidavits from the record in the *Thompson case* was preserved. The testimony of one Otis Redd, a witness for the plaintiff, was admitted, as follows:

"I took over the Ford dealership at Wagener (South Carolina) about 1939. On February 10, 1942, a representative of Ford came to my place of business and among other things tried to force me to buy two new Ford cars. This, of course, was after the freeze order of January 1, 1942, and the only way I could sell the cars would have been to the Government or a certificate holder. I refused to buy the cars. He kept insisting in such a dictatorial manner that he finally got me worked up to the point of saying that I would not buy the cars even if that meant the cancellation of the contract. He then said if I wanted to terminate the contract he would draw the notice for me. Our disagreement had grown so unpleasant that we were acting hastily and with some degree of temper. I told him all right I would cancel it. He drew the notice and gave me a copy of it. I signed the original and he took it. Attached hereto is a copy of my copy of the notice.

"After termination of my contract a Ford representative visited me at my place of business twice, once with Pope Gantt, who expected to get the Ford agency at Wagener, and once with Mr. Briggs, who did get the agency. On each of said occasions the business of the said Ford Representative was to assist the prospective dealer in procuring my building, by rental, for said new dealer. The Ford Motor Company had treated me so badly that I refused to rent the building to any Ford dealer."

Plaintiff also produced as a witness, Morgan Tender, a mechanic, who worked as such in 1940 and 1941 and until

January 9, 1942, for Bamberg Motor Sales, at Bamberg, South Carolina, which was a considerable Ford dealer, with ten to twelve mechanics and helpers. He testified that "Zone Representatives" of Ford Motor Company visited this dealer during the period of his employment and checked new cars and parts on hand, tested the machines in the repair shop and advised the purchase of certain tools. He related an instance of a new car which gave trouble and a representative came from Ford's Charlotte Branch, put on a work-coat, obtained a helper in the shop and proceeded to make mechanical repairs. In another case, the witness telephoned the Charlotte Branch which authorized the replacement of the motor, as was done in another instance when a Charlotte representative visited the dealer and authorized the replacement. The branch representative also inspected an unsatisfactory truck being used in a swamp and recommended that the driver be replaced. This witness said that the branch representative constantly advised the purchase of more Ford parts for the dealer's stock and generally instructed the mechanics. Tender was hurt in an accident and in a hospital for months after which he opened his own repair shop and bought Ford parts necessary in his work from another Ford dealer, Mr. Riser, at the town of Olar, South Carolina, and that plenty of parts were available, with one or two exceptions, during the war period covered by his testimony.

Andrew Staley testified that he was a mechanic for the former Ford dealer, Redd Motor Sales, at Wagener, South Carolina, from 1920 and that in 1926 a certain Ford model had a body defect which was corrected and all these Ford cars which the dealer sold were repaired with parts furnished by the Ford Motor Company and the necessary repairs demonstrated at Wagener by its representative from Charlotte, who stayed two days. The witness was employed by Mr. Redd when he gave up the Ford dealership, the circumstances of which are related in his testimony, and that after the end of his dealer contract Mr. Redd purchased

Ford parts from the Ford distributor in Columbia, Wilson Motor Company.

By order dated July, 1945, trial Judge Sease rendered judgment against the defendant in the full amount of the penalties for which the suit was brought, to wit, $7,300.00, and this appeal followed. It is from both circuit court orders, as already indicated. That sustaining the service of process is practically a following of our decision in the *Thompson case,* 200 S. C., 393, 21 S. E. (2d), 34. By proper petition appellant seeks review and reversal of the latter (the *Thompson case*) but we do not think that it should be overruled. The factual showing here is even stronger than there. In it the prior decisions of this Court upon the point were examined and those of contrary result were satisfactorily distinguished. (See also the somewhat similar, almost contemporaneous case of *Jones v. General Motors Corp.,* 197 S. C., 129, 14 S. E. (2d), 628.)

Appellant earnestly argues that the facts of the *Thompson case* arose before the recent war and the restrictions upon its ordinary activities occasioned by the applicable governmental regulations were sufficient to change its status of "doing business", even if the result of the *Thompson case* was correct. However, the record discloses that the activities of appellant within the state were reduced by the war but not discontinued and the legal effect of its restricted business should not be affected, under the evidence of appellant's own branch officers detailing their travels and missions in the state during the war. The parts business was decreased about fifty per cent. but was carried on as before; and the sales of motor vehicles, appellant's products, to civilians were curtailed, but they nevertheless continued from the stocks on hand at the beginning of the period of rationing. The uncontradicted evidence of appellant's former dealer at Wagener established that appellant attempted to force new automobiles upon him as late as February 10, 1942. This action was commenced later in that year. It is not out of place to say that similar testimony could hardly be expected from other, continuing dealers.

Appellant's exceptions are appropriate to raise the questions stated in its brief as follows:

A. Was the Ford Motor Company on the 27 July, 1942, "doing business" in South Carolina to such an extent as to constitutionally subject it to process left with the Secretary of State?

B. If so, was the Ford Motor Company during the entire period from July 27, 1940, to July 27, 1942, "doing business" in South Carolina to such an extent as to constitutionally subject it to the domestication statute (Code, 7765-7769) and its penalties in a suit brought by leaving process with the Secretary of State?

This statement of the issues indicates an interrelation of them which largely disappears upon analysis, as will be seen.

It is elementary in our procedure that the finding by the trial court of facts sustaining jurisdiction, or failing to establish the latter, is ordinarily conclusive upon this court if supported by evidence and uninfluenced by error of law. 3 S. E. Dig., 677, and Sup., Appeal and Error, Key 1010 (1). In this case, however, there appear no substantial conflicts in the evidence. The contest is of the legal effect of the facts which we have rather fully stated except those derived from *Thompson v. Ford Motor Co.,* 200 S. C., 393, 21 S. E. (2d), 34, where summary of them may be found.

Furthermore, the order rendering judgment for the failure of appellant to comply with the domestication statutes is clearly an adjudication of law in that it, in effect, holds that the facts established that appellant is doing an intrastate business in the state, and, regardless of its contrary intent and failure to so declare, it is subject to the domestication statutes and liable to exactions of the statutory penalty for its failure to comply with them. This outran the authority of *Thompson v. Ford Motor Co.,* and was "following" it further than it went.

Painstaking study of the authorities, state and federal, which latter are controlling of the meaning and effect of the Federal Constitution, has convinced us that appellant is doing business in South Carolina, under the facts of this

case, sufficient to subject it to the jurisdiction of our courts, obtainable by service of process through the Secretary of State pursuant to the pertinent statute; but the business shown is interstate commerce and appellant, as long as it so confines its activities, cannot be forced to domesticate or pay the penalty for failure, without unconstitutional burden upon that commerce. Contrary conclusion would necessarily embrace the adjudication that appellant's dealers are its agents, which is not warranted by the terms of the contracts or the nature of the dealings. *McMaster v. Chevrolet Motor Co.* (EDSC), 3 Fed. (2d), 469. *State v. W. T. Rawleigh Co.*, 172 S. C., 415, 174 S. E., 385. The applicable statutes (sections of our current code) and some of the decided cases will be reviewed. They demonstrate the soundness of the decision indicated.

Section 7765 of the Code of 1942 requires that a foreign corporation which is doing business in the state shall file notice with the Secretary of State designating a location within the state where process may be served, with provision that upon failure of compliance the offending corporation shall be deemed to have designated the Secretary of State upon whom process may be served in any legal action growing out of the transaction of business in the state.

Under the latter circumstances, copy of the process with a fee of one dollar shall be delivered to this state official, whereupon service shall be deemed complete as in the case of service upon residents within the state, provided that notice of such service and a copy of the process be forthwith sent by registered mail by the plaintiff to the defendant foreign corporation and the latter's return receipt and plaintiff's affidavit of compliance with the statute be filed in the court, with a further provision for substituted service by delivery of a copy of the process without the state, with proof thereof filed.

There is a further safeguard and assurance of the defendant's "day in court" in a provision that the court, quoting, "may order such continuances as may be necessary to afford

the defendant foreign cor'e' ation reasonable opportunity to defend the action·"

These provisions comply with the fairest concept of due process, and their effectiveness for the accomplishment of their patent purpose is evidenced in this proceeding, of which the foreign defendant had timely notice and has vigorously defended. Such method of service of a foreign corporation doing business in the state, by delivery of process to a state official, with provision for actual notice to the defendant, has apparently become a common one. The subject is fully discussed in the recent case of *Liquid Veneer Corporation v. Smuckler* (9th CCA, 1937), 90 Fed. (2d), 196· That was a suit instituted in the state court by delivery of process to the Secretary of State of California. The statute of the latter was similar to ours and the foreign defendant corporation had not complied. The statute and service were attacked, but upheld in a well-reasoned decision.

Because the problems presented by this appeal are related to a foreign corporation doing business in the state they are subject for their final solution to the United States Constitution and the interpretative decisions of the Federal Courts, for that Constitution imposes upon Congress the regulation of commerce between the states. Art. 1, Sec.. 8, clause (3). Necessarily this embraces the determination of what is interstate commerce and has naturally resulted in the rule that a state may not burden interstate commerce by regulation or taxation, without Congressional permission. These propositions are so elementary that they need no citations of authority to sustain them.

The great growth of corporate business during recent decades and the development of merchandising units of national scope have given rise to countless controversies in state and federal courts; and as already pointed out, this and other state courts are bound to follow the decisions of the federal tribunals. The distinction is now well defined, and applicable here, between doing business by a foreign corporation within a state sufficient to subject it to the jurisdiction of the latter's courts, and the doing of intrastate

business therein which subjects it to the requirement of domestication and the consequent burdens of state regulation and taxation. Resort is had again to the opinion in *Liquid Veneer Corporation v. Smuckler, supra,* from which we quote:

"The business transacted in the state by a foreign corporation to permit service must be such as to warrant the inference that the corporation is present and its activity must be more or less continuous. A foreign corporation may be doing business in a state to bring it within the jurisdiction of the court and amenable to its process and yet not obtain a status to be regulated by a state statute or bring it within the statutory provision requiring a license for operation of such foreign corporation. *Vicksburg L. & N. Ry. v. DeBow,* 148 Ga., 738, 98 S. E., 381. Doing business having relation to interstate commerce is distinguished from doing business making the foreign corporation amenable to service of process. See *Webster v. Doane,* 137 Misc., 513, 241 N. Y. S., 242; *Auto Trading Co. v. Williams,* 71 Okla., 302, 177 P. 583; *Knapp v. Bullock Tractor Co.,* 242 Fed., 543."

The last pertinent decision of the Supreme Court which has come to our attention is *International Shoe Co· v. State of Washington,* 66 S. Ct., 154, 66 U. S., 154, 90 L. Ed., 112, opinion by the late, lamented Chief Justice Stone. The appellant, which was held liable in a state court for the payment of state unemployment compensation taxes, was a Missouri corporation which was selling its products in Washington through its salesmen resident there. Upon comparison of the facts of that case and this, it appears that Ford Motor Company is far deeper enmeshed in business in this state than was the Shoe Company in Washington. Nevertheless, the court concluded that the foreign corporation was sufficiently present in the jurisdiction to be subject to the jurisdiction of the state courts without violation of due process of law. Service of process was accomplished by delivery to a salesman in the state, similar to the service upheld in our *Thompson case, supra.*

Appellant undertakes to distinguish the authority of the decision in the *International Shoe Company case,* pointing out the presence of an applicable federal statute which expressly permitted the ·levy and collection of state unemployment taxes. But this related only to the point of alleged unconstitutional burden upon interstate commerce and did not affect the larger points involved, namely, the presence of the foreign corporation sufficient to subject it to the jurisdiction of the state court and the effectiveness of the service of process therefor. As we understand the authority of that case it goes far to clarify the multitude of prior uncertain precedents and establish a guide for the lower federal courts and the state tribunals to follow. Perhaps it will improve the situation which gave rise to the comment of the eminent and eloquent Judge Learned Hand of the 2nd CCA in *Hutchinson v. Chase and Gilbert,* 45 Fed. (2d), 139, where he said in the opinion, as follows: "It is quite impossible to establish any rule from the decided cases; we must step from tuft to tuft across the morass". It was similarly said by the annotator in L. R. A., 1916F., p. 334, as follows: "The only general statement that will fit all the cases bearing upon the question is that they are numerous, varied and inharmonious."

There was cited in the opinion in the recent *International Shoe Company case, supra,* a note upon the subject in 29 Columbia Law Review 187, entitled, "What Constitutes Doing Business by a Foreign Corporation for Purposes of Jurisdiction". It is an interesting discussion and plausibly advances the theory that the difficulties of the courts in determining whether a foreign corporation is doing business in a given state sufficient to warrant jurisdiction of the latter's courts were occasioned by the fiction of consent to be sued which was implied from the entry and transaction of business by a corporation in a foreign state; and that the subsequent theory of "corporate presence" is equally untenable. The author suggests the premise that upon the question whether it is reasonable and constitutional to subject an undomesticated foreign corporation to suit in a particu-

lar jurisdiction, the nature of the cause of action and when and how it arose should be inquired into. Otherwise, and if the "corporate presence" test alone be used, there can logically be no distinction between jurisdiction of causes of action which are foreign in their origin and those which arose from the transaction of business within the forum, and jurisdiction can be properly denied of the former (foreign causes of action) only by application of the difficult test of convenience of defense and trial, which some of the cases have undertaken to apply. The gist of the discussion is that the rule should be, with certain now irrelevant exceptions, that when business is transacted within a foreign state by a corporation which gives rise to causes of action, the courts of that state should have jurisdiction of their trial. Reason for the rule is that a resident of a state should not ordinarily be put to the inconvenience and expense of suing in a foreign jurisdiction upon his cause of action which arose in the state of his residence through the activity therein of the foreign corporation defendant.

The suggested fair test was illustrated by *La Porte Heinekamp Motor Co. v. Ford Motor Co.* (D. C. Md., 1928), 24 Fed. (2d), 861, where the cause of action arose out of the activities of a district manager of the present appellant and despite the facts, as here, that the representative sold no cars and his activities were related only to the advancing of interstate business, the jurisdiction was upheld. The opinion in that case was by District Judge Soper, now a Judge of the 4th CCA. The contract of the Ford dealer who sued there was very similar to that now in use and involved before us· The company had no factory, warehouse or office in Maryland, just as it has none such in South Carolina; and it, itself, sold no automobiles or other products in Maryland. The activities of its traveling representatives were described, as were the various elements of control of the dealer who was said not to be an agent of the company, but the latter in practice maintained a very definite control over the management of the dealer's business, as here. Following the authority of *International Harvester Co. v. Ky.*, 234 U. S.,

579, 34 S. Ct., 944, 58 L. Ed., 1479, it was held that the Ford Company was doing business in Maryland, substantial enough to warrant the inference that the corporation was present within the jurisdiction and subject to service of process upon its traveling representative.

Recurring to 29 Col. Law Review, 187, it was said at the outset of the article that it was concerned only with what was "doing business" to render a foreign corporation amenable to process; and it was pointed out that some courts treat "doing business' as meaning the same when used for determining whether a foreign corporation is taxable or subject to the state's qualifying laws (domestication), but that the latter is generally conceded to be a different problem, for which there were cited: 21 Col. L. Rev., 362; 25 *ibid*, 1018; 36 Harv. L. Rev., 327; and *Tauza v· Susquehanna Coal Co.,* 220 N. Y., 259, 115 N. E., 915. It is this distinction which is of controlling importance in this case. See again, *Liquid Veneer Corporation v. Smuckler, supra.*

A case which was similar in facts, so far as they went there, to the case in hand, arose in the Federal Court of the Eastern District of this State a few years ago. It was *McMaster v. Chevrolet Motor Co.,* 3 Fed. (2d), 469, *supra.* There was a similar contract to that before us, perhaps not as far-reaching, but it included much control of the dealer, inspection, accounting, division of territory, etc. Absent, among other things, was evidence of the "servicing" of the manufacturer's warranty of its products. The service of process there involved was on a dealer. The Court convincingly held that the contract did not constitute agency, so even if the defendant was doing business in the state, which latter was unnecessary to the decision, the service was improper and therefore invalid. Here we have instead service through the Secretary of State under a fair and workable statute.

In *Vilter Mfg. Co. v. Rolaff* (8th CA, 1940), 110 Fed. (2d), 491, it was held that the sales representative (upon whom process was served) of a foreign corporation who occasionally supervised installations of defendant's product and adjusted complaints, occasioned the presence of his employer

to the extent that it was doing business in the state for jurisdictional purposes. The court said: "The criterion for the question of state regulation differs from the tests which control in questions which arise in service of process. *International Harvester Co. v. Ky.*, 234 U. S., 579; 34 S. Ct., 944; 58 L. Ed., 1479. *Liquid Veneer Corporation v. Smuckler,* 90 Fed. (2d), 202 * * * A foreign·corporation engaged in interstate commerce is * * * subject to service of process under the laws of the state if it is carrying on business therein. *International Harvester Co. v. Ky., supra. Busch v· L. & N. R. Co.,* 322 Mo., 469, 17 S. W. (2d), 337."

*Knapp v. Bullock Tractor Co.,* 242 Fed., 543, was a case in which service was upheld upon a foreign corporation when there was followed a statute similar to ours, filing with the Secretary of State with requirement of notice by him by mail to the foreign corporation defendant. The court said: "Since the decision in *International Harvester Co. v. Ky.,* 234 U. S., 579, 34 S. Ct., 944, 58 L. Ed., 1479, the fact that a foreign corporation may be engaged in interstate commerce does not in any wise serve to render it immune from the assertion of jurisdiction by the state courts in any state in which it may be engaged in doing business, and in which appropriate provision is made by the law thereof for the assertion of jurisdiction over it. *Armstrong Co. v. New York Central,* 129 Minn., 104, 151 N. W., 917, L. R. A., 1916E, 232; *Atkinson v. U. S., Operating Co.,* 129 Minn., 232, 152 N. W., 410, L. R. A., 1916E, 241. * * * The corporation is obviously seeking to do all the business it can, and yet escape the jurisdiction of the local tribunals."

Without undertaking to analyze the contracts before us in the instant case and in *Moore Machinery Co. v. Stewart-Warner Corporation,* (N. D. Cal., 1939), 27 Fed. Sup., 526, which latter was a "distributor's" contract for the purchase and sale of Stewart-Warner products, it may be said that they are very similar. The syllabus of the decision contained in the report is as follows: "Foreign corporation was doing business in the state within meaning of California

statutes so that it could be served by serving the Secretary of State where its products were extensively sold in California, previously through plaintiff as a 'distributor', under a limited agency and not as an independent merchant dealing with the foreign corporation on plaintiff's own initiative, but in conformity with stipulations contained in contract * * *" The use of the term "limited agency" in characterization of the contract there (equally applicable to the contract now before us) is interesting and instructive. The court denominated the near-agent created by its terms as a "dealer". In the words of that decision, a "dealer" in the instant case is very far from an independent merchant, dealing on his own initiative, but, on the contrary, is pretty well shackled by the provisions of his contract with appellant.

A landmark decision of the Supreme Court was that of *International Harvester Co. v. Ky.*, 234 U. S., 579, 34 S. Ct., 944, 58 L. Ed., 1479, (cited in some of the foregoing quotations from subsequent decisions of lower federal courts) in which it was held that the Harvester Company, a foreign corporation was doing business in the State of Kentucky to an extent sufficient for prosecution in the state court for violation of a criminal statute, which resulted from continuous solicitation of orders which were sent to another state and filled for delivery of the goods in the state in interstate commerce, but the sales representatives had authority to receive payments and take promissory notes payable at banks within the state. The result was despite a studied effort on the part of the defendant corporation to avoid subjecting itself to jurisdiction of the state courts, followed by Ford here. The Supreme Court said:

"The contention comes to this: so long as a foreign corporation engages in interstate commerce only, it is immune from the service of process under the laws of the state in which it is carrying on such business. This is indeed, as was said by the court of appeals of Kentucky, a novel proposition and we are unable to find a decision to support it, nor has one been called to our attention·

"True, it has been held time and again that a state cannot burden interstate commerce or pass laws which amount to the regulation of such commerce; but this is a long way from holding that the ordinary process of the courts may not reach corporations carrying on business within the state which is wholly of an interstate commerce character."

There are numerous facts in the record before us which taken together manifest the presence of the Ford Company in South Carolina more clearly, it seems to us, than the presence in Kentucky of the Harvester Corporation by the facts recited in the opinion of the last cited case. Here we have the ingenious dealership contract, with its maifold controls over the dealer by the corporation, its retention of right to repurchase its cars, trucks and parts, its servicing of its warranties delivered by the dealers with its cars and trucks to the consumer-purchasers; its sending of its admitted representatives into the state for various purposes in connection with its activities in commerce in the state, etc.

The general subject of jurisdiction of a state court of a foreign corporation and the validity of service of process upon the latter is extensively annotated in 60 A. L. R., 994, 101 A. L. R., 126 and 146 A. L. R., 941. The subject case of the last note is *Frene v. Louisville Cement Co.,* .. ., App. D. C., ... , 134 Fed. (2d), 511, 146 A· L. R., 926. The opinion was by Justice Rutledge, now of the Supreme Court of the United States. Service was upon a sales representative of the Kentucky corporation who lived in nearby Maryland but whose major business was acquired in the District of Columbia. (Here it appears that Ford's representatives who travel this state are located in the neighboring city of Charlotte, in North Carolina.) The statute applicable to the District was similar to ours in that it authorized service of process upon an officer, agent or employee in the District in suits "growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia or growing out of any tort committed in the said District". Our statute likewise limits jurisdiction obtained by service upon the Secretary of State, substituted

process agent, to "proceedings against said foreign corporation growing out of the transaction of any business in this state". The discussion in the opinion in the *Frene case* is a learned one and concludes that mere solicitation of business by a foreign corporation within the forum is insufficient to give the court of the latter personal jurisdiction of the corporation, but that the underlying theory of the old rule that "doing business" had perforce to include the concluding of contracts has been exploded; and that maintenance of regular business activity establishes jurisdiction, whether or not it includes the final stage of contracting, and the corporate "presence" for jurisdictional purposes results from less than the maintenance of contracting agents within the forum; and it was said that very little more than "mere solicitation" brings about this result. The decision explained and applied the "solicitation plus" rule within which the instant case surely falls; and service of process was sustained to give the Court of the District personal jurisdiction of the nonresident or foreign corporation. This is what this court held with respect to the instant defendant in the *Thompson case, supra,* which is now reaffirmed and adhered to in all its significance. *

Also a relevant authority is another District of Columbia (Court of Appeals) case of *Carroll Electric Co. v. Freed-Eisemann Radio Corporation,* (1931), 50 Fed. (2d), 993. The opinion was brief but sufficiently recited the facts that the defendant was a New York Corporation which attempted by the provisions of its dealer's (there called distributor) contract to stay without the jurisdiction of the local courts. The summary of the terms of the contract shows its striking similarity to that of Ford, though more concise. It was said by the court that service of process upon an employee of the corporation would not be quashed for the contract created a limited agency in the distributor who was not an independent merchant and that both parties to it were transacting business within the District, as well as in New York where the contract was made.

*Bendix Home Appliances v. Radio Accessories Co.,* (8th CAA, 1942) 129 Fed. (2d), 177, is illustrative of what appears to be the best of modern judicial thought upon the subject. The contract between the Bendix Corporation, of Delaware, with its principal place of business in Indiana, and a Nebraska corporation looking to the sales of products of the manufacturer in Nebraska and Iowa was similar in its terms to the Ford dealer contract, particularly in the obligation of the sales representative to service the warranties, under which the products were sold, during the term provided by the warranties of the Bendix Corporation to the purchasers of the products, corresponding to Ford's express warranty delivered to the purchasers of its products within this state by the local dealers. The service of process was upon the State Auditor, as well as upon an alleged agent of the foreign corporation, and the court held that both were good. It was observed in the opinion that: "The activities of a foreign corporation which are sufficient to make it amenable to process within a state by service upon an officer of the state or upon the corporation may be less than those re-. quired to subject the corporation to the provisions of the state's licensing and taxation statutes." It was further said, expressly applicable to the facts of that case and of this: "Although the contract between the parties did not create Radio Accessories an agent of Bendix in the State of Nebraska, nevertheless, the work of the distributor as well as that of the employees of Bendix, Inc., in making good the warranty to the individuals purchasing laundries, was to that extent the activity of Bendix, Inc."

The American Law Institute's Restatement of Conflict of Laws contains the following at page 255: "Under the constitution of the United States, a state cannot require that a foreign corporation, as a condition of engaging within the state solely in interstate commerce, designate a principal place of business or file an annual statement of condition" etc. But in the comment following the foregoing, it is said: "The fact that a corporation is engaged in interstate com-

merce does not make inapplicable provisions concerning service of process on foreign corporations * * *"

This instance is not the first in which this court has held valid service of process upon a foreign corporation "present" in the state by service upon the Secretary of State pursuant to Code Sec. 7765, where the corporation has not designated a local process agent thereunder. See *Garret Engineering Co. v. Auburn Foundry*, 176 S. C., 59, 179 S. E., 693.

Consideration of the foregoing authorities, selected from the numerous citations of counsel and the many others which we have consulted, is convincing that under the evidence adduced and the facts found in this case, appellant was doing business in South Carolina amply sufficient to subject it to the jurisdiction of the court at the time of the commencement of this action and render applicable to it the statutory provision for service which was followed; so the order of the circuit court, per Judge Bellinger, is affirmed.

This upholding of service upon a foreign corporation engaged here only in interstate commerce but present by its officers or agents within the state, by delivery of process to the Secretary of State and the doing of the other details prescribed by the statute, now section 7765 of the Code, is of course, approval of an additional method to that of actual service in any cause of action upon an officer or other proper agent within the jurisdiction. (Secs. 434 and 826, Code of 1942.) The latter is typified by the well-reasoned decision in *Lipe v. Carolina, C. & O. R. Co.*, 123 S. C., 515, 116 S. E., 101, 30 A. L. R., 248.

Inapplicable is our recent decision in *Deaton Truck Lines v. Bahnson Co.*, 207 S. C., . . . ., 36 S. E. (2d), 465, for it involved a single, isolated transaction of interstate commerce with only accompanying, incidental acts within the state. Here involved is a long continued and constant course of conduct which clearly constituted doing business in South Carolina for jurisdictional purposes.

. We turn now to the more critical phase of the appeal which is the question whether the appellant should be held

to liability for the statutory penalties for failure to comply with the statutes and for which judgment was awarded by the lower court by the last order under attack, that by Judge Sease, dated July, 1945.

Following Code Section 7765, companion statutes require that a foreign corporation doing business in this state in addition to the designation of a process agent (in default of which it may be served through the Secretary of State) shall file copies of its charter and by-laws and other information annually, and pay for such filing substantial fees, fifty dollars originally, and lesser ones thereafter. The sum of the proceedings is "domestication" and we are of opinion, as said before, that it cannot be required of a foreign corporation which is not engaged in intrastate business in the state. A. L. I. Restatement of Conflict of Laws, *supra*. The heart of this feature of the present litigation is found in Code Section 7769 wherein a penalty of ten dollars per day is imposed for each day of failure to comply with the preceding sections requiring the filing of the specified papers and the payment of fees, which sections have already been adverted to and will now be examined more closely.

Chapter 154 of the Civil Code of 1942, containing the statutes here invoked by plaintiff, includes within its purview and provides for the "domestication" of foreign corporations entering the state for the purpose of doing an intrastate business. This is clearly indicated by the first section of the chapter, number 7764, wherein it is provided that any foreign corporation is "permitted to locate and carry on business within the state in like manner and with like powers" as domestic corporations, subject to the terms and conditions stipulated in the following sections; and it is one of such following sections, number 7769, under which it is sought in this action to penalize appellant for the failure to file the papers and pay the fees stipulated in the intermediate sections. But the appellant Ford Motor Company has not located in South Carolina and is not carrying on business therein, except its interstate business, which constitutes commerce among the states and is subject to regulation only by

Congress; the state may not burden it by the financial exactions stipulated in this chapter of the Code without running afoul of the Federal Constitution. *Standard Fashion Co. v. Cummings,* 187 Mich., 196, 153 N. W., 814, L. R. A·, 1916F, 329. *International Textbook Co. v. Pigg,* 217 U. S., 91, 54 L. Ed., 678, 30 S. Ct., 481, 27 L. N. S., 493, 18 Ann. Cas., 1103. *Dahnke-Walker Mill Co. v. Bondurant,* 257 U. S., 282, 66 L. Ed., 239, 42 S. Ct., 106. *Furst v. Brewster,* 282 U. S., 493, 51 S. Ct., 295, 75 L. Ed., 478.

Many other decisions (mostly from state courts of last resort) are cited in the footnotes to sustain the following text in 15 C. J. S., 380: "State statutes placing restrictions and conditions on the doing of business within the state by a foreign corporation are inoperative as to the foreign and interstate business transacted by such a corporation, they being regarded, as to foreign and interstate commerce, either as void or, to save their constitutionality, as inapplicable; and the corporation need not comply therewith as a condition precedent to engaging in, or enforcing rights growing out of, foreign or interstate commerce, nor does nonobservance by it afford any ground for excluding or ousting it from the state, or for imposing fines, penalties, liabilities, or disabilities on it or its officers or agents·" To the same effect is 23 Am. Jur., 248.

However, section 7765 may reasonably and validly be, and is, construed to apply to foreign corporations desiring to transact intrastate business within the state, and also foreign corporations which desire to, and do, restrict their business here to interstate commerce; and the latter is the status of appellant, so it is subject to the jurisdiction of our courts as to causes of action arising from its activity within the state by the substituted service followed in this action, for there is nothing unreasonable or burdensome in the statutory provision for service of process upon the Secretary of State, in the absence of the designation of a process agent within the state, in view of the care with which the statute provides for resulting actual notice to the foreign corporate defendant and opportunity to it to defend.

The remaining provisions of the chapter, requiring the filing of copies of the charter, by-laws and certain financial and other information annually were intended to, and do, apply to foreign corporations which desire to domesticate and, indeed, are compelled to, if they engage in intrastate business. Section 7767, which requires the payment of fees to the Secretary of State, refers expressly to foreign corporations "domesticating in this state"; and the penalty section, No. 7769, refers to "any such foreign corporation", *viz.,* any "foreign corporation domesticating in this state". This construction harmonizes the sections and saves all from invalidity for impingement upon the Federal jurisdiction of interstate commerce and, therefore, is in accord with fundamental rules of statutory construction. South Carolina cases in 30 S. E. Dig., 856 *et seq.,* and Supplement, Statutes, keys 206 and 207. *St. Louis S. W. R. Co. v. Arkansas,* 235 U. S., 350, 35 S. C., 99, . . . L. Ed., . . .

Appellant's business in South Carolina is interstate in character, according to the evidence, and it cannot be required to domesticate or · suffer the statutory penalty for failure thereabout. Infliction of the latter would burden interstate commerce, which the state cannot constitutionally do. Appellant's many dealers in the state are not its agents; they are in intrastate business here, not it. And its traveling representatives are here on occasions "servicing" its warranties, cultivating the interstate business, supervising it and soliciting more, but they make no local sales or collections nor engage otherwise in intrastate business so far as the record before us shows. The activities of the itinerant representatives are incidental to the interstate business but they undoubtedly manifest the presence here of the corporation for jurisdiction purposes.

Therefore, the circuit court order of July, 1945, per Judge Sease, is reversed insofar as it undertook to render a money judgment against appellant.

Affirmed in part; reversed in part.

MESSRS. ASSOCIATE JUSTICES FISHBURNE, TAYLOR and OXNER and MR. ACTING ASSOCIATE JUSTICE J. HENRY JOHNSON concur.