## 19721

Lemuel TRIPLETT, Jr., as Temporary Administrator of Lemuel Triplett, Respondent, v. R. M. WADE AND COMPANY and Columbia Supply Company, Defendants, of whom R. M. Wade and Company is, Appellant.

(200 S. E. (2d) 375)

420

*Messrs. Robinson, McFadden, Moore & Pope,* of Columbia, *for Appellant,* cite:

*Messrs. Dallas D. Ball,* and *Richardson & Plowden,* of Columbia, *for Respondent,* cite:

November 7, 1973.

BUSSEY, Justice.

Involved in this appeal are two tort actions in which summonses but no complaints were served. The record would indicate that one is for the alleged wrongful death of one Lemuel Triplett, and the other the surviving cause of action for injury to said Triplett. Both would appear to be based upon the alleged malfunction of a Wade Quick-lock coupler unit manufactured and sold by the appellant R. M. Wade and Company and in use by Lone Star Industries at Olympia Village, Columbia, South Carolina.

Appellant Wade is an Oregon corporation not domesticated to do business in South Carolina and service of the summonses in the two actions was effected upon Wade pursuant to Sec. 10-424 of the 1962 Code of Laws.

Wade appeared specially through its attorneys for the sole purpose of moving to quash the purported service of process upon it and to dismiss the actions for lack of jurisdiction. These motions were heard by the Honorable J. A. Spruill, Presiding Judge, upon documentary evidence and affidavits. Thereafter, the trial judge denied the motions to dismiss and held that the Court of Common Pleas for Richland County had jurisdiction of the appellant Wade in these two actions. This appeal followed.

While the appellant states and argues several questions, basically there is only one question involved on this appeal. That question, under the controlling decisions of the United States Supreme Court and this Court, is simply whether or not appellant Wade had such contact with this State that the maintenance of these actions against it in South Carolina does not "offend traditional notions of fair play and substantial justice". Such is the test for determining whether the due process clause of the Fourteenth Amendment to the United States Constitution is violated by the exercise of in personam jurisdiction over a foreign corporation. We proceed to review the facts in the light of the stated question. Most unfortunately, and adding somewhat to the difficulty of decision is the circumstance that plaintiff's counsel furnished the Court only the barest minimum of facts pertaining to the issue of jurisdiction. Much more pertinent information was furnished by Wade in resisting jurisdiction.

Wade has no agents, officers, servants, offices, places of business, warehouses or listed telephones in South Carolina. It manufactures Wade Quicklock couplers at its plant in Portland, Oregon, which couplers are used for joining pipes or other apparatus for use in transmitting or conducting

liquids, gases or air. On July 1, 1955, Wade entered into a distributor agreement with John W. Burress of Roanoke, Virginia, then a proprietorship now a corporation. By the terms of such agreement, Burress acquired exclusive right to sell and distribute Wade Quicklock couplers to certain specified customers only, in eleven southern and southeastern states, including South Carolina. At one point such agreement proclaims the distributor to be "an independent contractor," but such proclamation, of course, did not necessarily make him such.

An examination of the agreement shows that Wade exercised a considerable measure of control over the operations of Burress. The distributorship of Burress was restricted to the sale of Quicklock couplers to contracting, mining, petroleum and industrial services. Specifically exempted from the agreement was the distribution of such couplers to irrigation and farming enterprises. Wade reserved to itself the right to sell directly to various export agents, manufacturers, the U. S. government, etc. Wade agreed to refer to the distributor any inquiries from within the territory except those from prospects to which Wade was permitted to make sales, and Burress was required to give such inquiries prompt and efficient handling through direct contact, to follow up any prospect aggressively and report back to Wade the final outcome. Applied literally, this provision of the contract required Burress to follow up on behalf of Wade inquiries from irrigation and farming enterprises to whom Burress had no right to sell.

Under the agreement, Wade controlled the prices by which Burress could purchase; agreed to furnish him with current advertising literature and display material provided that such remained the property of the manufacturer and should be returned to it upon request. Burress agreed to advertise and promote the trademark "Wade Quicklock" in the designated territory. It was provided that Wade would deliver products ordered by Burress to any point or destination within the territory designated by Burress at

the time of order. Wade warranted all of the couplers and parts therefor, of its own manufacture, against defective workmanship and materials for a period of one year from the date of shipping, but limited its liability under such warranty to furnishing of replacement parts FOB for the destination specified in the original order.

The fifth paragraph of the agreement was as follows:

"Distributor agrees to maintain fair and reasonable selling prices; to render proper services to purchasers of Wade Quicklock couplers; to ascertain that all services rendered shall at all times be conducted and maintained so as not to detract from, interfere with, or reflect upon the reputation of Manufacturer or its products. Distributor is not an agent or employee of Manufacturer but an independent contractor, and said products will be sold in Distributor's name. Distributor shall, however, advertise said products as being furnished by Manufacturer and shall not remove from said products any identifying marks placed thereon by Manufacturer, and any stamp placed thereon by Distributor shall be subject to Manufacturer's approval."

Either party could terminate the agreement by simply giving 90 days written notice to the other, but Wade reserved the right to terminate the same without notice upon the failure of Burress to perform any obligation required of him under the agreement.

When the distributorship agreement is analyzed, it clearly shows that Wade contemplated making sales to certain customers in the territory through Burress; contemplated making certain sales directly by Wade; and that it either already had or contemplated establishing a different means or channel of marketing its product to irrigation and farming projects within the territory. Required of Burress by the agreement was the promotion of Wade's product and good name throughout the territory with all potential customers for Wade's product, whether or not Burress could sell to such customers under the agreement.

The record discloses that Wade Quicklock couplers are stocked by W. P. Law and Co., on Corley Mill Road, Lexington, South Carolina, and such fact is evidence that Wade has been successful in its efforts over a long period of years to establish a market for the sale of its product to "irrigation and farming enterprises" in South Carolina. It is not inappropriate, we think, to judicially notice that in the classified yellow pages of the Columbia telephone directory, W. P. Law & Co. advertises itself under the caption "Irrigation Systems and Equipment."

Two publications of the appellant Wade, to-wit: "Quicklock Installation" and "Wade Quicklock Couplers" were obtained in South Carolina by Lone Star Industries prior to the accident giving rise to these actions. One Harold P. Tennant, an employee of Wade for approximately eighteen years, lived in Farmville, Virginia, and was designated by Wade as "Eastern national sales manager, irrigation division." According to his affidavit, Mr. Tennant's primary duties or functions with the company were to call upon distributors who bought from Wade and to make investigations for Wade when required. Following the accident at Lone Star Industries in 1971, which gave rise to these causes of action, Mr. Tennant came to Columbia for the purpose of investigating said accident on behalf of Wade.

The record contains no direct evidence as to the volume of Quicklock couplers being shipped into and sold in South Carolina, nor as to precisely where or how Lone Star Industries acquired the couplers being used by it. We deem to be immaterial, however, the precise means by which Lone Star acquired its couplers, it being readily inferable that such were acquired through one of Wade's designated channels for marketing the same in South Carolina.

Jurisdiction, as we understand the controlling, legal principles, does not rest simply upon the measure of success which has rewarded Wade's effort or the volume of sales which it has achieved in South Carolina.

But, to the extent that such is entitled to weight, it is certainly reasonable to infer that Burress has satisfactorily performed the task of promoting the sales of Wade's Quicklock couplers throughout the territory, including South Carolina, or else Wade would not have continued this agreement over a period of 16 or 17 years. It seems quite clear that Wade has been engaged, at least since 1955, in an effort to develop to the fullest extent a market for its products in South Carolina through more than one channel, and it is inferable that certainly a measure of success has been achieved.

It is well settled that a finding of the lower court that a defendant was transacting business in South Carolina to the extent necessary to subject it to the jurisdiction of the courts of this State is binding upon us unless without support in the evidence, or manifestly influenced or controlled by error of law. *Thompson v. Ford Motor Co.*, 200 S. C. 393, 21 S. E. (2d) 34; *Jones v. General Motors Corp.*, 197 S. C. 129, 14 S. E. (2d) 628; *Carolina Boat and Plastics Co. v. Glascoat Distributors, Inc.*, 249 S. C. 49, 152 S. E. (2d) 352; *State v. Ford Motor Co.*, 208 S. C. 379, 38 S. E. (2d) 242; West's South Carolina Digest, Appeal and Error, Key No. 1010(1).

In the present case there is no conflict of substance in the evidence, but the evidence is susceptible of more than one reasonable inference in several respects and we do not think that it can be soundly held that His Honor's findings of fact below were unsupported by reasonable inferences drawn from the evidence, nor do we perceive wherein any of his findings or conclusions were influenced by any error of law.

While not all decisions appear to be in accord with the trend, for some thirty years there has been a judicial and legislative trend toward a broadened, liberal concept of what constitutes transacting business as a basis for jurisdiction of a foreign corporation. Leading, controlling deci-

sions of the United States Supreme Court are *International Shoe Co. v. State of Washington,* 326 U. S. 310, 66 S. Ct. 154, 90 L.Ed. 95 (1945), and *McGee v. International Life Ins. Co.,* 355 U. S. 220, 78 S. Ct. 199, 2 L. Ed. (2d) 223 (1957). Leading, controlling decisions of this Court include *Boney v. Trans-State Dredging Co.,* 237 S. C. 54, 115 S. E. (2d) 508, and *Carolina Boat and Plastics Co. v. Glascoat Distributors, Inc.,* 249 S. C. 49, 152 S. E. (2d) 352. *Phillips v. Knapps-Monarch Co.,* 245 S. C. 383, 140 S. E. (2d) 786, relied upon by the appellant is not factually at all in point with the instant case.

Code Section 10-424, under which process here was served, and Code Sections 12-721 and 12-722 originally constituted a single Code section and, of course, have to be construed together. When we adopted the "South Carolina Business Corporation Act of 1962", Code Section 12-722 was revised and is now Section 12-23.14 in the supplement to the Code. The last cited section subjects to the jurisdiction of South Carolina courts every foreign corporation, not authorized to do business in this State, which does in this State "either itself, or through an agent, any business" with respect to any action arising out of or in connection with "any business" in this State. While not here relied upon as controlling, as pointed out by the trial court, Section 10-2.803 clearly shows a legislative intent to broaden the concept of what constitutes transacting business in the State of South Carolina and to extend South Carolina's jurisdiction accordingly.[1]

Numerous Federal District Court decisions in South Carolina, as well as decisions of the Fourth Circuit Court of Appeals, have long viewed the decisions of this Court as extending this State's service of process laws and the jurisdiction of its courts to the outer limits allowable under the

---

[1] This section was declared unconstitutional in part in several decisions at the trial level for violation of Sec. 17, Article III of the South Carolina Constitution with respect to the title of the Act. See 24 SCLR 474. Said section was re-enacted subsequent to the commencement of these actions. 1972 Act No. 1343, 57 Stat. 2518.

due process requirements of the *International Shoe Company* case. See numerous cases cited in footnotes to Code Sections 12-722, 12-23.14 and 10-424. A concise and accurate discussion of our prior decisions interpreting our service of process statutes is contained in the opinion in *Shealy v. Challenger Mfg. Co.*, 304 F. (2d) 102 (4 Cir. 1962). It was there noted that two of our prior decisions did not appear to be in complete accord with the trend of others. These were *Hoffman v. D. Landreth Seed Co.*, 220 S. C. 193, 66 S. E. (2d) 813, and its progenitor, *Industrial Equipment Co. v. Frank G. Hough Co.*, 218 S. C. 169, 61 S. E. (2d) 884. Subsequently, the rationale of these two decisions was largely, if not totally, repudiated, we think, by our decision in *Carolina Boat and Plastics Co. v. Glascoat Distributors, Inc.*, 249 S. C. 49, 152 S. E. (2d) 352.

In *McGee v. International Life Ins. Co.*, *supra*, the United States Supreme Court upheld the jurisdiction of California in a case where the only activity of the defendant in the State of California was the delivery of an insurance policy, correspondence and premium collections in connection therewith, all by mail. A discussion of the *McGee* case, prior authority to the contrary, and the trend of law on this point is contained in our case of *Ross v. American Income Life Ins. Co.*, 232 S. C. 433, 102 S. E. (2d) 743, wherein jurisdiction over a foreign insurer was upheld despite the fact that its only proved contact with this State was the delivery of a single insurance policy by mail. It is true that the statutory language in *Ross* is somewhat different from the statutory language here involved, but insofar as due process is concerned, the difference in the statutory language is, we think, of no moment. Certainly the evidence here reasonably supports the inference that Wade's contacts with South Carolina were far more extensive than the delivery of a single insurance policy by mail.

It is argued, *inter alia*, that the presence of an agent for the purpose of investigating a single claim is not sufficient to support jurisdiction where the corporate

employer is not otherwise doing business in the State. There is, admittedly authority for this proposition, including our own case of *Hoffman v. D. Landreth Seed Co., supra,* but, as above mentioned, we think the rationale of that decision has been subsequently repudiated by this Court. Other decisions of this Court are to the effect that a foreign corporation which sends an officer or agent into the state with reference to the settlement or adjustment of the claim being sued upon is "doing business" within the state thereby subjecting itself to the jurisdiction of the courts of the state. See *Thompson v. Ford Motor Co.,* 200 S. C. 393, 21 S. E. (2d) 34, and cases therein cited. Even if it be conceded that the investigation of the fatal accident by Harold P. Tennant, Wade's Eastern sales manager, in the normal course of his duties, did not by itself constitute the transaction of business by Wade within this State, certainly that fact, when coupled with other facts revealed by and reasonably inferable from the evidence, furnishes adequate basis for the ultimate finding that Wade was, in fact, doing business in South Carolina and subject to the jurisdiction of our courts.

Under the authorities herein cited, the facts disclosed by the record and the inferences reasonably deducible therefrom, we conclude that Wade had sufficient contact with this State that the maintenance of these actions does not "offend traditional notions of fair play and substantial justice" and that there was no error on the part of the trial court in denying appellant's motions.

Affirmed.

Lewis and Brailsford, JJ., concur.

Moss, C. J., and Littlejohn, J., dissent.

Moss, Chief Justice (dissenting):

I respectfully dissent and would reverse the order of the lower court.

Lemuel Triplett, Jr., as temporary administrator of Lemuel Triplett, deceased, the respondent herein, by letter

dated February 18, 1972, sent by certified mail, forwarded to R. M. Wade and Company, the appellant herein, two copies of summonses, (Complaint not Served); one being designated "Wrongful Death", and the other being designated "Survival Action". The aforesaid letter was addressed to the appellant at 1919 N. W., Thurman Street, Portland, Oregon, with an indication thereon that a carbon copy was being sent to the Secretary of State for South Carolina. The caption of each case is identical and the sole differentiating description was as to the nature of each action. It is thus apparent that these are tort actions.

It is agreed that copies of these summonses were served upon the Secretary of State for South Carolina pursuant to Section 10-424 of the 1962 Code of Laws, as amended.

The appellant, following the receipt of these summonses, through its attorneys, appeared specially and for the sole purpose of moving to quash and dismiss the purported service of process upon it for the lack of jurisdiction.

The motions of the appellant were heard by The Honorable J. A. Spruill, Presiding Judge, upon documentary evidence and affidavits. Thereafter, the trial judge denied the motions to dismiss and held that the Court of Common Pleas for Richland County had jurisdiction of the appellant in these two actions because "the defendant was doing business in South Carolina to such an extent that it does not offend one's sense of fair play and substantial justice to permit service in the instant case." Even though the respondent argued that service was good under Section 10-2.803 of the Code, the "long arm statute," the trial judge did not base his decision on this section.

The respondent has invoked the provisions of Section 10-424 of the 1962 Code of Laws, as amended, in his attempt to serve a summons in each action on the appellant through the office of the Secretary of State and by mailing to the appellant copies thereof at its State of Oregon address. The aforesaid action permits constructive service upon a foreign

corporation "if such foreign corporation transacts business in this State." The issue presented here is whether or not, at the time of the event which gave rise to these actions, the appellant was transacting business in South Carolina.

In *Boney v. Trans-State Dredging Co.,* 237 S. C. 54, 115 S. E. (2d) 508, we held:

"No universal formula has been, or is likely to be, devised for determining what constitutes 'doing business' by a foreign corporation within a state in such sense as to subject it to the jurisdiction of the courts of that state. The question must be resolved upon the facts of the particular case. *Jones v. General Motors Corporation,* 197 S. C. 129, 14 S. E. (2d) 628; *State v. Ford Motor Co.,* 208 S. C. 379, 38 S. E. (2d) 242.

"Recent decisions of both federal and state courts have tended to discard older concepts whereby jurisdiction was accorded on the fictional premise of the corporation's implied consent or on the theory that the corporation is 'present' wherever its activities are carried on, and to substitute therefor, as the jurisdictional test, the requirement that the corporation have such contact with the state of the forum 'that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' *International Shoe Co. v. State of Washington,* 326 U. S. 310, 66 S. Ct. 154, 158, 90 L. Ed. 95, 161 A. L. R. 1057."

However, in *Hanson v. Denckla,* 357 U. S. 235, 78 S. Ct. 1228, 2 L. Ed. (2d) 1283, the court noted that traditional notions of fair play and substantial justice do not confer unlimited jurisdiction of foreign corporations upon state courts, saying:

"But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See *Vanderbilt v. Vanderbilt,* 354 U. S. 416, 418, 77 S. Ct. 1360, 1 L. Ed (2d) 1456, 1459. Those restrictions are more than a guarantee of immunity from inconvenience or distant litigation. They are a conse-

quence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. See *International Shoe Co. v. Washington,* 326 U. S. 310, 319, 66 S. Ct. 154, 159, 90 L. Ed. 95, 103, 161 A. L. R. 1057."

In *Phillips v. Knapp-Monarch Co.,* 245 S. C. 383, 140 S. E. (2d) 786, plaintiff was injured when an appliance for brewing coffee, manufactured by the defendant, allegedly exploded. The plaintiff attempted service of process on the defendant through the office of the Secretary of State under Section 10-424 of the Code. The circuit court, finding that the defendant had no agent and transacted no business in South Carolina, granted the motion of the defendant to dismiss the action. We held that the judgment of the circuit court was supported by all of the evidence and must be sustained. We further held that the fact alone, that products manufactured by the defendant and bearing its trade name passed through the channels of trade into South Carolina and were here resold by independent merchants, did not constitute the transacting of business by the defendant in this State.

In the case of *Carolina B. & P. Co. v. Glascoat Distributors,* 249 S. C. 49, 152 S. E. (2d) 352, the facts show that Glascoat had a salesman, who resided in North Carolina, who operated in South Carolina, and who called regularly upon Carolina and other firms in South Carolina for the purpose of soliciting orders for its products, and over a period of several years Carolina and its predecessor in business had purchased from Glascoat products amounting to more than $10,000 annually; similar business was transacted by Glascoat with other corporations in five other counties in this State; the purchase orders by Carolina were given sometimes to Glascoat's soliciting agent in person, sometimes by letter or telephone to Atlanta or Miami; and

deliveries of its products in South Carolina were made by mail or truck. Glascoat, a foreign corporation, appearing specially, moved to dismiss upon the grounds that it was not transacting business in the State and was not amenable to substituted service of process. From an order denying the motion, Glascoat appealed. We affirmed holding that the evidence before the circuit court furnished an adequate basis for the conclusion that such corporation was transacting business in South Carolina and was amenable to substituted service of process.

In this case, as well as the *Boney* case, we pointed out that the jurisdictional test requires only that the corporation have such contact with the state of the forum that the maintenance there of an action against it *in personam* does not "offend 'traditional notions of fair play and substantial justice,'" and that each case must be resolved upon its particular facts. In these cases we suggested that among the factors to be considered in determining jurisdiction are the duration and nature of the corporate activity within the state, the character of the acts giving rise to the litigation, the circumstances of their commission, and the relative inconvenience to the respective parties of a trial in the state of the forum on the one hand and in the state of the corporate domicile on the other.

We now examine the record to determine whether the appellant was "transacting business" and had the requisite minimal contacts with this State sufficient to give our courts jurisdiction.

Wade Quicklock Couplers are manufactured by the appellant at its plant in Portland, Oregon. These couplers are used for joining pipes or other apparatus for use in transmitting or conducting liquids, gases or air. In order that one of these couplers can be used, it is necessary that the customer be supplied with tubing. The appellant does not manufacture this tubing, but it is obtained by its distributors from independent sources.

It is uncontradicted that the appellant is an Oregon corporation and is not domesticated in South Carolina. It is likewise uncontradicted that the appellant has no agents, officers, servants, or other representatives in South Carolina, and has no offices, places of business, warehouses, listed telephones or other incidents of business in this State.

It appears that on July 1, 1955, the appellant entered into a Distributor Agreement with John W. Burress of Roanoke, Virginia, then a proprietorship, now a corporation. By the terms of such agreement Burress acquired exclusive rights to sell and distribute Wade Quicklock Couplers, for commercial and industrial purposes only, in eleven southern and southeastern states, including South Carolina. The agreement specified that Burress was not an agent or employee of Wade, but an independent contractor and classified as a "stocking" distributor, buying from the appellant and keeping on hand a large stock of couplers and fittings. Burress bought Quicklock Couplers from the appellant and then resold them for its own account to its customers. The agreement further provided that any inquires received from points within the territory would be referred by the appellant to Burress. It was also agreed that Burress would actively promote the sale of the appellant's products within its territory. All orders of Burress for couplers, under the terms of the agreement, were acceptable only at appellant's place of business in Portland, Oregon.

It appears by affidavit of one Harold P. Tennant, Eastern Sales Manager of the appellant, residing in Farmville, Virginia, and who had been so employed for approximately eighteen years, that in 1971, he heard that an accident had occurred at Lone Star Industries, Columbia, South Carolina, and such involved Quicklock Couplers manufactured by his employer. He stated that he came to South Carolina, this being his first trip in eight or ten years, for the sole purpose of investigating this accident. He avers that he had a conversation with a representative of Lone Star Industries and got what information he could about the accident. This

affiant also avers that his primary function with the appellant was to call upon distributors who bought from Wade and to make investigations when required. He further stated that he has had no business dealings in South Carolina, since he came here to investigate the accident at Lone Star Industries.

The respondent filed an affidavit of one Donald M. Pridgen, whose identity or connection with these cases is not disclosed, in which it is averred that on November 3, 1972, he spoke with Harold Tennant who had come to Columbia "to investigate as to whether his company had contributed to the accident." He further says that he received a business card from Tennant showing him to be the "Eastern National Sales Manager" for the appellant. He also avers that on about August 15, 1972, that he found that Quicklock Couplers, manufactured by the appellant, could be purchased at the store of W. P. Law & Co., Lexington, South Carolina.

It is indicated in the record that Lone Star Industries obtained two publications having to do with Quicklock installation instructions and Wade Quicklock Couplers. The source from which Lone Star Industries received these two publications is not revealed.

There is also nothing in the record to indicate that the appellant ever delivered any Quicklock Couplers to destinations in South Carolina or that it ever shipped them from its plant in Oregon to any point in this State.

Although Quicklock Couplers were in use when the event which gave rise to these actions occurred, there is nothing to indicate from whom, when or where Lone Star Industries acquired them. There is no evidence that they were distributed through Burress of Roanoke, Virginia, or from any customer of either the appellant or Burress. Of course, if the couplers manufactured by the appellant and bearing its trade name passed through the channels of trade into South Carolina and were here resold by independent merchants,

such would not constitute the transacting of business by the appellant in this State. *Phillips v. Knapp-Monarch Co., Supra.*

Under the facts disclosed by the record here, the only connection that the appellant had with South Carolina was (1) its couplers were being used by Lone Star Industries in Columbia, South Carolina; and (2) after the accident happened a representative of the appellant came to Columbia to investigate the accident at Lone Star Industries. It is not sufficient to show that Wade was transacting business in South Carolina merely because couplers manufactured by it were being used by Lone Star Industries in Columbia, South Carolina. The additional fact that a representative of the appellant came to South Carolina to investigate the accident at Lone Star Industries likewise does not constitute transacting business in South Carolina by the appellant. Such was an isolated incident or event and did not imply or show that the appellant was transacting business in South Carolina. *Hoffman v. D. Landreth Seed Co.,* 220 S. C. 193, 66 S. E. (2d) 813. A corporation not otherwise doing business in the state is not brought therein by the presence of an agent for the purpose of investigating a single claim. 20 C. J. S. Corporations § 1920(e) (3), at page 162.

It is my conclusion that the appellant has not had the necessary relations, minimum contacts or ties with the State of South Carolina to subject it to the jurisdiction of the courts of this State by service of process pursuant to Section 10-424 of the Code, as amended.

The judgment of the lower court holding that the appellant was subject to the jurisdiction of the courts of this State should be reversed and this case remanded thereto for an appropriate order dismissing the purported service of process.

LITTLEJOHN, J., concurs.