## 14595

DOUGLASS, SHERIFF, v. WATSON, COUNTY TREASURER, ET AL.

(195 S. E., 116)

September, 1937.

*Messrs. N. W. Edens, Blease & Griffin* and *P. A. Murray, Jr.*, for appellants.

*Messrs. Samuel Want, J. M. Lynch* and *Killian Barwick*, for respondents,

January 6, 1938.

The opinion of the Court was delivered by Mr. Justice Bonham.

At its 1937 session, the General Assembly of South Carolina passed an Act No. 376, which was approved May 27,

1937. The Act bears the following prolix title: "An Act to Provide for the Collecton of Delinquent Taxes in Chesterfield County in Five Annual Installments; to Extend the Duration of the Lien of Such Taxes; to Provide That the Lien of Said Taxes Shall Attach to the Proceeds of Loss Under the Fire Insurance Policies; to Provide for the Separate Payment of the Poll Tax; to Create the Office of Deputy Tax Collector for Chesterfield County and Prescribe His Duties and Fix His Salary; to Provide That the Costs, Fees, Expenses, Mileage and Other Charges for the Collection of Delinquent Taxes Shall be Paid Into the Ordinary Fund of Chesterfield County; to Provide for the Redemption of Property from Tax Sales; to Stay the Execution and Delivery of Tax Deeds; and to Further Regulate the Enforcement and Collection of Delinquent Taxes in Chesterfield County."

July 27, 1937, the plaintiff, F. S. Douglass, as sheriff of Chesterfield County, brought this action to compel the named defendants, who constitute the Forfeited Land Commission of Chesterfield County, to accept deeds from him as sheriff for parcels of real estate sold by him for taxes and bid in by the auditor of the county on behalf of the Forfeited Land Commission of that county.

R. S. Dickson & Company, a corporation, for itself and other bond houses interested in buying a recent issue of Chesterfield County bonds, petitioned to be allowed to intervene in the action, alleging that it had bought more than $500,000.00 of the bonds of said county and was interested in the Act under review, which vitally affected the large sum of delinquent taxes, approximately $500,000.00 due in said county and upon which petitioner relied largely for the payment of principal and interest of said bonds.

The Forfeited Land Commission contested the Dickson petition. Judge Dennis overruled this objection and granted an order making R. S. Dickson & Company a party plaintiff to the action.

Judge Dennis, on July 23, 1937, issued an order requiring the defendants to show cause before him why the prayer of the complaint should not be granted.

The Forfeited Land Commission filed an answer to the complaint and made return to the rule to show cause, the gist of which answer and return was to the effect that they were acting under and by reason of the provisions of the Act No. 376, approved May 27, 1937; that the terms and conditions of the Act had not been complied with, and they refused for that reason to accept the deeds.

F. S. Douglass, as sheriff, demurred to the return and answer of the Forfeited Land Commission on the ground that the Act of 1937, No. 376, was in violation of various provisions of the Constitution of 1895, and was null and void, and did not justify the commission in its action thereunder.

R. S. Dickson & Company filed a separate demurrer to the answer to its petition for leave to intervene.

September 25, 1937, Judge Dennis filed his order holding the Act of 1937, No. 376, to be unconstitutional, null, and void; sustaining the demurrer to the answer of the defendants; and directing that the defendants accept from the plaintiff, sheriff, as and when tendered by him, all deeds duly executed by him to the Forfeited Land Commission of Chesterfield County, conveying to the said commission lands which have been sold by the sheriff of Chesterfield County for delinquent taxes, and which cover lands which have been bid in for the Forfeited Land Commission, and not redeemed as provided by law.

Let this order of Judge Dennis be reported.

Despite the wide range of pleading and argument which this case has taken, this Court might well adopt the order of Judge Dennis as the only judgment necessary to determine the vital issues made therein. Since, however, defendants have urged their appeal with zeal, and since respondents have given notice of additional grounds upon which they will ask this Court to sustain the judgment below, it

may facilitate the final determination of the whole matter if we pass upon certain other matters.

We shall not reproduce nor epitomize the long pleadings. After all is said and done, the issue to be determined depends upon the constitutionality of the Act under review. It is proper, then, to discuss in the light of the alleged unconstitutionality of the Act, the title thereof, and certain provisions of the Act to be noticed later.

It will be observed that the Circuit Judge did not pass upon the question whether the title to the Act violated Article 3, § 17, of the Constitution of 1895, which is in these words: "Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title."

This provision of the Constitution has received many and varied interpretations by the Courts and the law-writers—so many and so varied, indeed, as to defy the effort to lay down a fixed rule by which all shall be reconciled. We have found no suggestion more in accord with our own views than this, taken from 25 R. C. L., p. 848: "The topics in the body of the Act should be kindred in nature and have a legitimate and natural association with the subject of the title, and if the provisions of the Act itself cannot be fairly construed as embraced within the title of the Act, then it is in conflict with the constitution."

This is the standard or rule by which we elect to analyze the remarkable title of this discussed Act. It may be admitted, if you please, that the title seems to have some sort of verbal "relation," or reference, to delinquent taxes in Chesterfield County. But it is not admitted, but is denied, that "the topics in the Act have a legitimate and natural association with the title."

The title of the Act begins with this statement: "An Act to Provide for the Collection of Delinquent Taxes in Chesterfield County in Five Annual Installments." We are of the opinion, upon a scrutiny of the body of the Act, that

its apparent purpose was to delay and hinder the collection of "Delinquent Taxes in Chesterfield County," provided for through the regular legal provisions and statutory legislation thereabout.

The very purpose of this provision of the Constitution is that all persons shall be advised of the enactment of legislation affecting their interests. It hardly admits of argument that one following the course of legislation, and seeing the voluminous title of this Act, would not expect to find, or look therein, for legislation relating to the liability of insurance companies for delinquent taxes of insured persons. Nor would such seeker expect to find provisions which change the general laws of the State as they relate to both State and county taxes, and other school district and township taxes; or to find in such Act provisions for the extension of the lien of delinquent taxes, beyond the time allowed, or fixed, by the general law on the subject; nor would one expect to find in the Act a provision regulating the payment of the poll tax.

The title of the Act "holds out the promise to the ear," but the body of the Act "breaks it to the hope."

Read in the light of the principle of the rule cited from Corpus Juris, *supra,* we think the Act is obnoxious to the provision of Article 3, § 17, of the Constitution of 1895.

In the opinion of this Court, the Act is directly in the teeth of the letter and spirit of the provision of the Constitution embodied in Subdivision 9 of Section 34 of Article 3 of the Constitution, which is in these words: "The General Assembly of this State shall not enact local or special laws concerning any of the following subjects or for any of the following purposes. * * * In all other cases, where a general law can be made applicable, no special law shall be enacted."

The Hon. Geo. W. Gage, long a Circuit Judge of this State, and at the time of his death a member of this Supreme Court, was a member of the convention which formulated the Constitution of 1895. He wrote the unanimous

opinion of this Court in the case of *Tisdale et al. v. Scarborough et al.*, 99 S. C., 377, 83 S. E., 594, 595. He was mindful from his experience at the bar of the great evil of local or special legislation; speaking of it in the *Tisdale case,* he said: "There had grown up in the General Assemblies of the entire Union a disposition for legislation by delegation. That kind of legislation was deemed pernicious; it lacked the settled consideration and consent of the lawmaking body; it evaded state-wide responsibility; it encouraged local activity; it discouraged the attrition of minds and the consideration of those problems which make for a wise public policy. *The ninth paragraph was the fruit of this large conviction of the convention.*" (Italics added.)

Chapter 109, Art. 1, § 2789 *et seq.,* Vol. 2, Code of Laws 1932, directs that the taxes shall be collected annually, and provides the time and places when the taxes shall be collected by the treasurers of the counties. When money must be forwarded to State Treasurer. Section 2800. Treasurer must notify county commissioners of funds collected and report monthly to County Superintendent of Education. Section 2801. Report monthly to Comptroller General. Section 2802.

It is patent that a general law can be made, *and has been made,* for the collection of taxes.

Article 4, § 2853 *et seq.,* relates wholly to the "Enforced Collection of Delinquent Taxes."

This is a general law.

Section 2853 regulates the issuing of executions by the treasurer to the sheriff. Section 2854 regulates the fees and charges allowed the treasurer and sheriff. Section 2855 regulates the required advertisement and sale under execution for delinquent taxes, for redemption and execution of title by the sheriff.

Section 2857 provides for purchase by the auditor for the sinking fund commission.

Section 2859 provides that the sheriff's deed shall be *prima facie* evidence of good title.

Section 2863 provides that tax lien expires in ten years.

In the face of this showing of abundant provisions by the General Assembly for the collection of delinquent taxes in all the counties of the State, it remains to enquire whether the Act No. 376, ostensibly for the purpose of collecting delinquent taxes in Chesterfield County, runs counter to the inhibition of the Constitution against the enactment of a local or special law where a general law can be made applicable.

Section 2 of the Act provides that the costs, expenses, fees, mileage allowed by the general law to treasurers and sheriffs shall be paid into the treasury of Chesterfield County.

Section 4, in lieu of such fees and costs, etc., provides that "the said sheriff and treasurer of Chesterfield County shall receive such compensation * * * as shall be provided by law."

The proviso directs that no deed or deeds, or tax titles, shall be made or delivered to the Chesterfield County Forfeited Land Commission for real property sold under deliquent tax execution until the county attorney of that county has passed upon the regularity of the sale, and the validity and merit of the deed in each such case; and not then until the Forfeited Land Commission of that county shall have made an investigation in each sale and has satisfied itself that the sheriff is able and ready to deliver to it the possession of the property described in the deed.

Sections 6, 7 and 8 provide for a board consisting of the treasurer, auditor, sheriff, and county attorney to pass upon all delinquent tax executions with power to return *nulla bona* such as they deem to be uncollectible. And the whole sum of the remaining delinquent tax executions of property already sold shall be divided into five equal amounts, and the sheriff is required to accept the amount due by each such delinquent taxpayer in five equal annual installments, beginning with January 1, 1938.

Section 11 provides a special method of collection of delinquent poll taxes.

Section 16 makes compliance with the provisions of this Act a prerequisite of a defaulting taxpayer of the right to redeem his property sold under delinquent tax execution.

Section 18 is reproduced here in full: "Whenever a taxpayer shall have paid all of his current taxes, and the annual installments of delinquent taxes, as provided for in this Act, and his delinquent poll taxes and commutation road taxes, if he shall be subject to the payment of such taxes, he shall be deemed to have paid all State, County and Special taxes, due and payable at such time for such year, subject to the provisions of this Act providing for the acceleration and maturing of delinquent installments; and Provided Further, That a lien for such delinquent taxes shall be revived, renewed and extended for a period of ten years from the date of the payment of the last delinquent tax installment made by such delinquent taxpayer; Provided Further, That the liens of the said delinquent taxes are hereby declared to be first liens upon the proceeds of any loss under any insurance policy upon the property, or any part thereof, encumbered by the lien of the said delinquent taxes. In case the proceeds of loss under any policy of insurance upon the property, or any part thereof, encumbered by the lien of the said delinquent taxes, are paid over by the insurer without satisfying the said delinquent taxes, such person, firm or corporation paying over the proceeds of loss under such policy of insurance shall be liable to Chesterfield County for the payment of the said delinquent taxes to the extent of such loss, and the person, firm or corporation receiving the proceeds of such loss shall be liable as for a conversion for the payment of such lien or liens, to the extent of the sums so received."

We have reproduced the general law, or its pertinent parts, and the pertinent parts of the Act, as they relate to the collection of taxes, that a comparison of the two may be made at a glance. It does not need that there be any de-

tailed comparison of the two to demonstrate that the Act No. 376 is a flagrant instance of special or local legislation in behalf of Chesterfield County, in violation of the Constitution.

Special advantages are given by the Act to Chesterfield County over other counties in the matter of the collection of the State taxes, and county and other taxes; in the matter of the collection of delinquent taxes in installments; in relation to the redemption of property sold; in the matter of the delivery of deeds to the property sold; in the extension of the lien on delinquent lands.

In the able and comprehensive opinion of Mr. Justice Baker in the case of *Webster v. Willams,* 183 S. C., 368, 191 S. E., 51, 54, 111 A. L. R., 1348, filed April 15, 1937, this very question of special or local legislation is discussed and determined. There, an Act of the Legislature was being considered which laid an additional penalty to the costs of collection of delinquent taxes in Orangeburg County, which is not added in other counties.

The opinion holds:

"We have, then, a subject which is in fact covered by the general law of the state, and as to which the Legislature has here undertaken to make a special and different provision, by a separate enactment, for Orangeburg County only.

*"We are unable to perceive how such a statute can escape the literal condemnation of the constitutional provision above referred to, which provision condemns a local law made to cover a situation 'where a general law can be made applicable.'"* (Italics added.)

We have emphasized this language of the opinion because it is in such exact application to the Act we are discussing.

The learned Justice who wrote the opinion in the *Webster v. Williams case, supra,* also wrote the opinion in the case of *Salley v. McCoy,* 182 S. C., 249, 189 S. E., 196, 214, from it this excerpt is taken: "That the subject is one that can be covered by a general law is not open to serious ques-

tion. It has been in fact so covered, and neither the generality of the coverage, nor the soundness of the classification of salaries of county officers on the basis implied in the act, is open to serious question."

No further citation of authorities is needed on this point. The unconstitutionality of this Act *"is not open to serious question."*

The appellants advance the argument that the Act contains the provision that "if certain provisions of the Act be declared unconstitutional, the whole is not to be so declared, if after the parts declared unconstitutional are deleted, the remainder is a full and complete Act within itself and separable from the unconstitutional parts."

That provision of the Act cannot save it. The vice of unconstitutionality pervades the parts of the Act essential to its operation. If any of it is left after deleting the patent evils of unconstitutionality, there remains but an empty shell, the body of which is gone. One may have a machine, in shape and appearance complete, but if the machinery which enables it to function is lacking, it is useless.

Respondents' counsel quote from the case of *Railroad Retirement Board v. Alton Railroad Company,* 295 U. S., 330, 55 S. Ct., 758, 79 L. Ed., 1468, the following: "The statute in this regard 'is not an inexorable command, and will not be given effect where the invalid provisions affect the dominant aim of the whole statute.'"

As we said above, what is left of the statute is inoperative.

We have not considered in detail the exceptions of the appellants; our disposition of the constitutional issues renders this unnecessary.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.