**Wayne R. McGEE, Plaintiff,**

v.

**HOLAN DIVISION OF OHIO BRASS COMPANY, Defendant.**

Civ. A. No. 71–396.

United States District Court,
D. South Carolina,
Florence Division.

Jan. 10, 1972.

Marvin P. Jackson, Jr., Florence, S. C., for plaintiff.

C. Dexter Powers, Florence, S. C., for defendant.

## ORDER

CHAPMAN, District Judge.

This matter is before the Court upon motion of the defendant to dismiss the action because of lack of jurisdiction over the person of the defendant corporation and to quash service of the summons and complaint.

The action is brought for personal injuries sustained on August 3, 1970, when an aerial hydraulic bucket fell to the ground while plaintiff was working as an electrical lineman for Sumter Builders, Inc. These buckets, sometimes called "cherry pickers", are operated from a truck and attached to a long arm or boom. The equipment in question had been purchased by Sumter Builders, Inc. from the defendant at its Griffin, Georgia, plant in 1962, and during 1963 had been sent from Florida to Cleveland, Ohio, for replacement of the boom.

The plaintiff alleges serious personal injuries and sets forth a cause of action against the defendant on breach of warranty and also a separate cause for negligent design and manufacture, inadequate testing and failure to warn.

The plaintiff obtained service of the summons and complaint upon the defendant at its plant in Griffin, Georgia. The service thereof was ordered by this Court in response to a motion of plaintiff's attorney since the U. S. Marshal for the District of South Carolina had been unable to locate the defendant in this district. There is no question that the service was made pursuant to Rule 4(e) F.R.C.P., so the question before the Court is whether this Court may legally exercise jurisdiction over the defendant.

Prior to International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) it had been thought to subject a foreign corporation to jurisdiction in the state, it must either be "present" within the jurisdiction, or in some way to have given its consent, expressed or implied, to service within the

state. *International Shoe* changed this by stating:

"Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' ".

■ What actions by a corporation within the territory of the forum will subject it to jurisdiction, and not be against traditional notions of fair play and substantial justice, is a question of fact for the Court.

In the present action the purchase of defendant's equipment was from its plant in Griffin, Georgia and not in South Carolina. Defendant is not domesticated in South Carolina and has not qualified to do business here. It does not maintain any office, agent or bank accounts in South Carolina and owns no property. The defendant is a corporation chartered and existing under the laws of the State of New Jersey and its principal place of business is in the State of Ohio. Affidavit of the president of Sumter Builders, Inc. indicates that defendant has a salesman representative who lives in Charlotte, North Carolina, and who makes approximately two trips per year to deponent's place of business in South Carolina. However, this affidavit shows that any purchases made by Sumter Builders, Inc. come through Graybar Electric Company and not directly from defendant. Graybar is not shown to be owned by defendant or a subsidiary of defendant, but is a separate corporation which distributes electrical equipment. Deliveries of defendant's equipment to South Carolina are not made in defendant's trucks or vehicles.

The plaintiff relies heavily upon the decision of Judge Haynsworth in Shealy v. Challenger Manufacturing Co., 4 Cir., 304 F.2d 102 (1962), but it is obvious from the examination of that decision that it is based primarily on the numerous deliveries of Challenger's products into South Carolina in trucks owned and operated by said manufacturer.

■ South Carolina has adopted a very broad contacts theory of jurisdiction. Carolina Boat and Plastics Co. v. Glascoat Distributors, Inc., 249 S.C. 49, 152 S.E.2d 352 (1967), Boney v. Trans-State Dredging Co., 237 S.C. 54, 115 S.E.2d 508 (1960). However, these decisions still provide that maintenance of an action in personam against a nonresident shall not "offend the traditional notions of fair play and substantial justice", which is the test applied in *International Shoe*.

■ The Court finds that the contacts of the defendant in the present case are so minimal that to require it to stand and defend this case in this district would be offensive to traditional notions of fair play and substantial justice.

The plaintiff also contends that the Court has jurisdiction of the defendant under the "long arm statute" provisions of the South Carolina Uniform Commercial Code, Section 10.2–803(1) (c) and (d), which provide as follows:

"10.2–803 Personal jurisdiction based upon conduct.

(1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's

(c) commission of a tortious act in whole or in part in this State;

(d) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State."

■ This Court finds these provisions of South Carolina's so called "Uniform Commercial Code" to be unconstitutional under Article III, Section 17, of

the Constitution of South Carolina, which requires "Every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title."

The South Carolina version of the Uniform Commercial Code was enacted as Act 1065, 54 Statutes at Large, p. 4027, 1966, and bore the following official title:

"An Act To Be Known As The Uniform Commercial Code, Relating to Certain Commercial Transactions In Or Regarding Personal Property And Contracts And Other Documents Concerning Them, Including Sales, Commercial Paper, Bank Deposits and Collections, Letters of Credit, Bulk Transfers, Warehouse Receipts, Bills of Lading, Other Documents of Title, Investment Securities, and Secured Transactions, Including Certain Sales of Accounts, Chattels Paper, And Contract Rights; Providing for Public Notice to Third Parties in Certain Circumstances; Regulating Procedure, Evidence And Damages In Certain Court Actions Involving Such Transactions, Contracts Or Documents; To Make Uniform The Law With Respect Thereto; and Repealing Inconsistent Legislation."

It is obvious from a review of this title that no mention is made of tort claims for personal injuries. Everything in the title relates to commercial transactions. A comparison of the South Carolina version of the Uniform Commercial Code, with the "Official Uniform Commercial Code", adopted by most of the other states and drafted by the American Law Institute and The National Conference of Commissioners on Uniform Laws, will reflect that Sections 10.2–801 through 10.2–809 of the South Carolina Code, which are listed in the Code as "Further Remedies", do not even appear in the Official Uniform Commercial Code. These sections, which allow the South Carolina court to exercise personal jurisdiction of nonresident defendants in connection with certain tort claims, and also provide for the service of process on these defendants, were added by the South Carolina legislature and no notice thereof is given in the title of the Act.

This is the very evil that the framers of the South Carolina Constitution were attempting to avoid by Section 17 of Article III. While the people of South Carolina may have thought they were getting the nationally recognized Uniform Commercial Code, the legislature actually passed an enlarged version thereof which included provisions for jurisdiction and service in personal injury tort claims in no way related to commercial transactions and with no warning in the title of their inclusion therein. In Dantzler v. Callison, 230 S.C. 75, 94 S. E.2d 177, the South Carolina Supreme Court stated that the object of this Constitutional provision is to prevent deception of the public. In Colonial Life and Accident Insurance Co. v. South Carolina Tax Commission, 233 S.C. 129, 103 S.E.2d 905, the Court stated the purpose of the section as follows:

"Its purpose is to prevent the General Assembly from being mislead into the passage of bills containing provisions not indicated in their titles, and to apprise the people of the subject of the proposed legislation and thus give them the opportunity to be heard if they so desire."

Although the South Carolina Supreme Court in *Dantzler* stated that this section has been generally construed with great liberality, two distinguished state trial judges, Honorable William L. Rhodes, Jr. and Honorable Francis B. Nicholson, in separate orders, have held that even the most liberal construction would not include these sections under the existing title, and have held that Section 10.2–803(1) (c) violates the requirements of Article III, Section 17 of the Constitution of this state. The South Carolina Supreme Court has not yet ruled on this point, but Judge Rhodes in his order of March 27, 1971, in the case of deLoach v. Nash stated:

"There is not the slightest inference in the Title of Act 1065 that its proce-

dural provisions embrace service outside the state in a tort action where the tort sued upon is completely divorced from a commercial transaction, contract or document. Admittedly, the word 'procedure' is a broad one. The Title to Act 1065, however, expressly limits the procedure contemplated to 'court actions involving such transactions, contracts or documents'. That the term 'such transactions' refers to commercial transactions is obvious since the commercial transactions are the only transactions mentioned in the title. . . ."

The Court realizes that the Uniform Commercial Code contained several hundred pages when it was passed by the legislature, and that the title could not contain a reference to everything contained therein. However, the sections relating to jurisdiction of nonresidents in tort actions are so unrelated and foreign to the remaining provisions and the primary purpose of the Act that notice should have been given in the title, as required by the Constitution. As stated in the *Colonial Life* case, supra, the purpose of this Constitutional provision is to prevent the General Assembly from being mislead and to apprise the people of the subject of the proposed legislation. With such a voluminous act it is doubtful if all of the members of the General Assembly realized that it contained provisions unrelated to commercial transactions.

This Court is aware of the decision of Honorable Donald Russell in Deering Milliken Research Corporation v. Textured Fibres, Inc., 310 F.Supp. 491 (D. C.S.C.1970) in which he held that Section 10.2–803(1) (g) is valid under Article III, Section 17 of the State Constitution. However, this section provides for the exercise of personal jurisdiction by a South Carolina court over a person as to a cause of action arising from the person's "(g) entry into a contract to be performed in whole or in part by either party in this State." The *Deering Milliken* case involved a contract to be partially performed in Spartanburg County, South Carolina, and the action arose out of a commercial transaction. Judge Russell did not discuss those provisions of Section 10.2–803 having to do with tort claims. He found that by using the word "procedure" in the title there was sufficient compliance with the requirements of the South Carolina Constitution in contract matters. Since Judge Russell's decision involved a contract case, it is not applicable to the question which has been raised in the present action and is not inconsistent with the ruling now to be made.

It is clear to this Court that Sections 10.2–803(1) (c) and (d) violate the requirements of Article III, Section 17 of the Constitution of the State of South Carolina. This Court in this order does not question or suggest the invalidity of any other part or portion of the South Carolina Uniform Commercial Code, except those just above mentioned.

It is, therefore, ordered that this case be dismissed since the Court is without jurisdiction over the defendant.

And it is so ordered.