**Nehemiah TENTION, Plaintiff,**

v.

**SOUTHERN PACIFIC RAILROAD COMPANY, Defendant.**

**Civ. A. No. 71–365.**

United States District Court,
D. South Carolina,
Columbia Division.

Jan. 10, 1972.

J. Clator Arrants, Camden, S. C., for plaintiff.

John Gregg McMaster, Thompkins, McMaster and Thomas, Columbia, S. C., for defendant.

ORDER

CHAPMAN, District Judge.

This case originated in the Court of Common Pleas for Lee County, South Carolina, and was removed to this Court on grounds of diversity of citizenship. The plaintiff alleges that he was injured when the door of a boxcar, which he was unloading, fell upon him. Plaintiff contends that said boxcar was put upon plaintiff's employer's property when in a dangerous, defective and unsafe condition, that said boxcar had a defective door track or door device and that the defendant knew or was in a position to have known of said condition and was negligent in allowing the boxcar to be placed while in a defective condition.

The defendant has moved for a dismissal alleging the service of process upon defendant was insufficient and that the Court does not have jurisdiction of the defendant.

The proper name of the defendant is Southern Pacific Transportation Company, as evidenced by the affidavit of C. L. Ward, Assistant Vice President of the company. However, a misnomer in process is not fatal, where the defendant is actually before the court, has been served and is not prejudiced by the mistake. Cooney v. Milwaukee Railroad Company, D.C., 34 F.R.D. 508 (1964).

The defendant corporation is organized under the laws of Delaware and has no money, bank accounts, track or real estate in South Carolina. It has no agents, employees or servants in South

Carolina nor any office, telephone or telephone listings in South Carolina. Except for moving freight and passenger cars which come into South Carolina from time to time, but which are always under the control of other railroads, it has no personal property in South Carolina. The defendant does solicit business in South Carolina. In answer to certain interrogatories defendant stated:

"Defendant's employees solicit business from prospective customers in the State of South Carolina to route their shipments via Southern Pacific in the areas served by the defendant, but defendant has no track in South Carolina.

"Defendant's employees, who live in North Carolina, solicit business from firms in South Carolina but the names of these firms from which business was solicited in November 1967 is not retained in the general office."

The car in question was loaded in Picacho, Arizona, and the consignee was Dan River Cotton Mills in Greenville, South Carolina. It is not clear from the record how this boxcar arrived in Lee County, South Carolina, since this would not be on a direct route to Greenville County from Arizona.

The defendant has raised two basic issues:

(a) Lack of jurisdiction over defendant corporation, with service thereon being void under due process clause of the Fourteenth Amendment, since defendant does not have the "minimum contacts" in this state that are required for such jurisdiction or service;

(b) The long arm statute under the Uniform Commercial Code of South Carolina, Section 10.2–803(1) (c) and (d) is invalid under Article III, Section 17 of the Constitution of South Carolina which requires "Every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." Defendant contends that the title does not refer to the "long arm" service of process provisions in tort actions contained in the body of the South Carolina version of the Uniform Commercial Code.

Plaintiff asserts that this action is brought under the Uniform Commercial Code which was enacted by South Carolina on May 5, 1966, and appears in the South Carolina Code as Title 10.1 through Title 10.10.. Service of process was made upon the defendant under Section 10.2–806(1) (c) which provides as follows:

"(1) When the law of this State authorizes service outside this State, the service, when reasonably calculated to give actual notice, may be made:

(c) by any form of mail addressed to the person to be served and requiring a signed receipt;"

Section 10.2–804 provides that when the exercise of personal jurisdiction is authorized by this section, service may be made outside the state.

The plaintiff claims jurisdiction of the defendant under Section 10.2–803(1) (c) and (d). These sections provide:

"(1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's

(c) commission of a tortious act in whole or in part in this State;

(d) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State; . . .."

The defendant challenges the constitutionality of these provisions, which are in effect a "long arm statute" and asserts that they are in violation of Article III, Section 17 of the South Carolina Constitution.

The South Carolina Uniform Commercial Code was enacted as Act 1065, 54

Statutes at Large 4027, 1966 and bore the following official title:

"An Act To Be Known As The Uniform Commercial Code, Relating to Certain Commercial Transactions In Or Regarding Personal Property And Contracts And Other Documents Concerning Them, Including Sales, Commercial Paper, Bank Deposits And Collections, Letters Of Credit, Bulk Transfers, Warehouse Receipts, Bills Of Lading, Other Documents Of Title, Investment Securities, And Secured Transactions, Including Certain Sales Of Accounts, Chattels Paper, And Contract Rights, Providing For Public Notice To Third Parties In Certain Circumstances; Regulating Procedure, Evidence And Damages In Certain Court Actions Involving Such Transactions, Contracts Or Documents; To Make Uniform The Law With Respect Thereto; And Repealing Inconsistent Legislation."

■ It is obvious from a review of this title that no mention is made of tort claims for personal injuries. A comparison of the South Carolina Uniform Commercial Code, with the "Official Uniform Commercial Code" adopted by most of the other states and drafted by the American Law Institute and The National Conference of Commissioners on Uniform State Laws, will reflect that Sections 10.2–801 through 10.2–809 of the South Carolina Code which are listed in the Code as "Further Remedies" do not even appear in the Official Uniform Commercial Code. These sections, which allow the South Carolina court to exercise personal jurisdiction of nonresident defendants in connection with certain tort claims, and also provide for the service on these defendants by "any form of mail addressed to the person to be served and requiring a signed receipt", were added by the South Carolina Legislature and no notice thereof is given in the title of the Act.

This is the very evil that the framers of the South Carolina Constitution were attempting to avoid by Section 17 of Article III. While the people of South Carolina may have thought they were getting the nationally recognized Uniform Commercial Code, the Legislature actually passed an enlarged version thereof which included provisions for jurisdiction and service in personal injury tort claims, in no way related to commercial transactions, and with no warning in the title of their inclusion therein. In Dantzler v. Callison, 230 S.C. 75, 94 S.E.2d 177, South Carolina Supreme Court stated that the object of this constitutional provision is to prevent deception of the public. In Colonial Life and Accident Insurance Co. v. South Carolina Tax Commission, 233 S.C. 129, 103 S.E.2d 908, the Court stated:

"[The purpose of this section] is to prevent the General Assembly from being misled into the passage of bills containing provisions not indicated in their titles, and to apprise the people of the subject of the proposed legislation and thus give them the opportunity to be heard if they so desire."

Although the South Carolina Supreme Court in *Dantzler* stated that this section has been generally construed with great liberality, two distinguished state trial judges, Honorable William Rhodes, Jr. and Honorable Francis Nicholson in separate orders have decided that even the most liberal construction does not justify the inclusion of these sections in a "commercial code" and have held that Section 10.2–803(1) (c) violates the requirements of Article III, Section 17 of the Constitution of this State. The South Carolina Supreme Court has not yet ruled on this point, but Judge Rhodes in his Order of March 27, 1971 in the case of deLoach v. Nash stated:

"There is not the slightest inference in the title of Act 1065 that its procedural provisions embrace service outside the State in a tort action when the tort sued upon is completely divorced from a commercial transaction, contract or document. Admittedly, the word 'procedure' is a broad one. The title of Act 1065, however, expressly limits the procedure contemplated to 'court actions involving such

transactions, contracts or documents'. That the term 'such transactions' refers to commercial transactions is obvious since commercial transactions are the only transactions mentioned in the title . . .."

The Court realizes that the Uniform Commercial Code contained several hundred pages when it was passed by the legislature, and that the title could not contain a reference to everything contained therein. However, the sections relating to jurisdiction of and service on nonresidents in tort actions are so unrelated and foreign to the remaining provisions and the primary purpose of the Act that notice should have been given in the title, as required by the Constitution. As stated in the *Colonial Life* case, supra, the purpose of this Constitutional provision is to prevent the General Assembly from being mislead and to apprise the people of the subject of the proposed legislation. With such a voluminous act it is doubtful if all of the members of the General Assembly realized that it contained provisions unrelated to commercial transactions.

This Court is aware of the decision of Judge Russell in Deering Milliken Research Corp. v. Textured Fibres, Inc., 310 F.Supp. 491 (D.C.S.C.1970) in which he held that Section 10.2–803(1) (g) is valid under Article III, Section 17 of the South Carolina Constitution. However, this section provides for the exercise of personal jurisdiction by a South Carolina court over a person as to a cause of action arising from the person's "(g) entry into a contract to be performed in whole or in part by either party in this state." The *Deering Milliken* case involved a contract to be partially performed in Spartanburg County, South Carolina, and the action obviously arose out of a commercial transaction. Judge Russell did not discuss those provisions of Section 10.2–803 having to do with tort claims nor did he discuss the provisions for service contained in Section 10.2–806. He found that by using the word "procedure" in the title there was sufficient compliance with the requirements of the South Carolina Constitution in contract matters. Since Judge Russell's decision involved a contract case, it is not applicable to the question which has been raised in the present case and not inconsistent with the ruling now to be made.

It is clear to this Court that Sections 10.2–803(1) (c) and (d) violate the requirements of Article III, Section 17 of the Constitution of the State of South Carolina. The Court in this Order does not question or suggest the invalidity of any other part or portion of the South Carolina Uniform Commercial Code, except those just above mentioned.

It is, therefore, ordered that this case be dismissed, since this Court is without jurisdiction over said defendant.

And it is so ordered.