19918

Dorothy M. THOMPSON, Respondent, v. Carol HOFMANN, Appellant

(210 S. E. (2d) 461)

*John H. Williams, Esq.,* of *Williams & Johnson,* Aiken, *for Appellant,*

*Messrs. Rodney A. Peeples,* of *Blatt, Fales, Peeples, Bedingfield & Loadholt,* Barnwell, and *Ronald L. Motley, Esq.,* of Greenwood, *for Respondent,*

December 4, 1974.

BRAILSFORD, Justice:

This is an action for alienation of affection brought by Dorothy M. Thompson, the respondent, against Carol Hofmann, the appellant. The appellant is a resident of New Jersey, and was served under Section 10.2-806(1)(c), as reenacted in 1972, the so-called long-arm statute[1] which provides for out-of-state service on non-residents in specified cases, including Section 10.2-803(1)(c), which provides:

"(1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's

"(c) commission of a tortious act in whole or in part in this State;"

---

[1] Sections 10.2-801 through 10.2-809, 1962 Code of Laws (Supp. 1973); Act No. 1065, 54 Stat. 4027 (1966), reenacted, Act. No. 1343, 57 Stat. 2518 (1972). This is in large part the Uniform Interstate and International Procedure Act.

The defendant appeared specially to challenge the court's jurisdiction. She contends that the above-quoted section violates Article III, Section 17 of the Constitution of this State, which provides that "every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." She also contends that if the section as reenacted in 1972 is declared valid, it cannot affect the service of process in this case without having an impermissibly retrospective effect. The defendant appeals from the lower court's order holding the service valid.

The long-arm statute was originally enacted in 1966 as a floor amendment to the South Carolina Uniform Commercial Code, placed in Article 2 and styled "Further Remedies." A number of out-of-state defendants successfully challenged its constitutionality under Article III, Section 17, quoted above, in the trial courts of this State and in the Federal courts.[2] In reaction to this, the General Assembly in 1972 reenacted the long-arm provisions under the following title:

No. 1343

"An Act to reenact Part 8 of Article 2 of Act 1065 of 1966, relating to the Uniform Commercial Code, so as to make the provisions of Part 8 which relates to certain definitions, personal jurisdiction based upon enduring relationship, personal jurisdiction based upon conduct, provision for service outside the State and to state that other bases of jurisdiction shall be unaffected, to establish a manner and proof of service, to establish individuals eligible to make service, to establish individuals to be served and to provide that other provisions shall remain unaffected."

The appellant's contention is that the 1972 Act relates to two subjects in violation of Article III, Section 17, because it purports to reenact part of the Uniform Commercial Code and yet provide for jurisdiction and out-of-state

[2] The respondent here concedes the unconstitutionality of the 1966 Act, making a decision by this Court unnecessary.

service in certain actions not germane to commercial transactions.

This contention cannot be sustained. In cases too numerous to mention, this Court has declared in the strongest terms that every presumption will be indulged in favor of constitutionality of a legislative enactment, which will be declared unconstitutional only when its invalidity appears so clearly as to leave no room for reasonable doubt as to its conflict with the Constitution. 6 West's South Carolina Digest, Constitutional Law, Key No. 48(1)-(8) (1974 Supp.). It is also axiomatic that a statute will, if possible, be construed in a manner conforming to constitutional limitations. *Ibid.*

Act No. 1343 of 1972, while purporting to reenact Part 8 of Article 2 of Act 1065 of 1966 (Uniform Commercial Code), is a complete remedial statute of substantial benefit. Its homogeneous terms relate to but one subject which is expressed in its title in more detail than is required. But for the reference therein to the 1966 Act (UCC), there would be no semblance of a ground for an Article III, Section 17 challenge to its constitutionality. This reference adds nothing to the substantive provisions of the legislation. If necessary to sustain its constitutionality, which we do not concede, the references in the 1972 Act to the reenactment of Part 8, Article 2 of the 1966 Act should be disregarded as surplusage. This would leave the statute complete in itself and of identical meaning and effect as that enacted, thereby effectuating the legislative will rather than frustrating it. In short, the constitutional challenge to the 1972 Act relates to form only and lacks sufficient substance to justify our striking it down as unconstitutional.

The appellant's second argument is that even if the 1972 reenactment is valid, it cannot sustain service of process on her, because the cause of action sued upon arose in 1969, prior to the reenactment. However, the great weight of authority from other jurisdictions holds

that long-arm statutes similar to that involved here, as distinguished from "implied consent" statutes, such as that involved in *Johnson v. Baldwin,* 214 S. C. 545, 53 S. E. (2d) 785 (1949), apply in actions commenced after the passage of the statute regardless of when the cause of action may have arisen. Annot., 19 A. L. R. (3d) 138, Sec. 4, p. 146 (1968); 62 Am. Jur. (2d), Process, Sec. 80 (1972). This rule, which we adopt, is applicable to this case.

Affirmed.

LEWIS and BUSSEY, JJ., concur.

Moss, C. J., and LITTLEJOHN, J., dissent.

Moss, Chief Justice (dissenting):

I am not in accord with the majority opinion in this case and feel compelled to dissent.

Dorothy M. Thompson, the respondent herein, instituted this action against Carol Hofmann, the appellant herein, for damages allegedly sustained by her as a result of the alienation of the affections of her husband by the appellant. It appears from the complaint that the appellant is a resident and citizen of the State of New Jersey.

The service of the Summons and Complaint was made upon the appellant under Code Section 10.2-806(1)(c), which provides as follows:

"(1) When the law of this State authorizes service outside this State, the service, when reasonably calculated to give actual notice, may be made:

"(c) by any form of mail addressed to the person to be served and requiring a signed receipt;".

Section 10.2-804 provides that when the exercise of personal jurisdiction is authorized by this section, service may be made outside the State.

The respondent claims jurisdiction of the appellant under Section 10.2-803(1)(c) which provides:

"(1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's

(c) commission of a tortious act in whole or in part in this State;".

The respondent alleged the commission by the appellant of certain tortious acts, in part, in this State, resulting in the alienation of the affections of her husband. The respondent contends that the court has jurisdiction of the appellant under the "long-arm statute" provisions of the South Carolina Uniform Commercial Code, Sections 10.2-801 through 10.2-809, as re-enacted by Act No. 1343, approved June 2, 1972, 57 Stats. at page 2518.

The appellant appeared specially, pursuant to Section 10-648 of the Code, and moved to quash the purported service upon her and to dismiss the action for lack of jurisdiction. She asserts specifically that Section 10.2-803(1)(c) violates Article III, Section 17, of the 1895 Constitution of this State, which provides "every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title", because the service procedure permitted refers only to commercial transactions and not to tort actions unrelated thereto.

The motion to dismiss was heard by the Honorable J. B. Ness, presiding judge, who by his order held the service valid and denied the appellant's motion. Due notice of intention to appeal was given.

The South Carolina Uniform Commercial Code was enacted into law on May 5, 1966, 54 Stats. at page 4027, now codified as Sections 10.1-101 through 10.10-103; and under the following official title:

## *"An Act*

"To be known as the Uniform Commercial Code, Relating to Certain Commercial Transactions in or regarding Personal Property and Contracts and other Documents con-

cerning them, including Sales, Commercial Paper, Bank Deposits and Collections, Letters of Credit, Bulk Transfers, Warehouse Receipts, Bills of Lading, other Documents of Title, Investment Securities, and Secured Transactions, including certain Sales of Accounts, Chattel Paper, and Contract Rights; Providing for Public Notice to Third Parties in Certain Circumstances; Regulating Procedure, Evidence and Damages in Certain Court Actions Involving such Transactions, Contracts or Documents; to Make Uniform the Law with Respect Thereto; and Repealing Inconsistent Legislation."

The title of the Act makes no mention of tort claims for personal injuries. A comparison of the South Carolina Uniform Commercial Code, with the "Uniform Commercial Code" adopted by many states and drafted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws, shows that Sections 10.2-801 through 10.2-809 of our Code, which are listed under the heading "Further Remedies", do not appear in the official Uniform Commercial Code. These sections which permit the South Carolina Courts to exercise personal jurisdiction over nonresident defendants in connection with certain tort claims, and providing the method of service of process, were added by our General Assembly, and no notice thereof was given in the title of the Act. This is the very evil that the framers of our Constitution were attempting to avoid by Article III, Section 17 thereof.

Admittedly, the General Assembly was attempting to adopt the nationally recognized Uniform Commercial Code relating to commercial transactions. However the General Assembly passed a version thereof which included provisions for jurisdiction and service in personal injury tort claims, Section 10.2-803(1)(c), with no indication in the title of the Act that the procedural provisions thereof embrace service outside the state in a tort action when the tort sued upon is completely divorced from a commercial transaction.

The Supreme Court of this State has not had occasion to consider the constitutionality of Section 10.2-803(1)(c) as applied to a personal injury tort claim unrelated to a commercial transaction. In the cases of *Tention v. Southern Pacific Ry. Co.,* D. C., 336 F. Supp. 25, and *McGee v. Holan Division of Ohio Brass Co.,* D. C., 337 F. Supp. 72, the Honorable Robert F. Chapman, Federal District Judge, held that, under Article III, Section 17, our Uniform Commercial Code granting to our courts *in personam* jurisdiction of nonresident defendants in connection with tort claims, unrelated to commercial transactions, was invalid. In the *Tention* and *McGee* cases, Judge Chapman refers to two decisions by state trial judges in each of which it was held that Section 10.2-803(1)(c) violates the requirements of Article III, Section 17 of the Constitution of this State. In each of these cases the trial judge dismissed the service of the Summons and Complaint in a tort action when the tort sued upon was completely divorced from a commercial transaction.

One of the state cases was that of *deLoach v. Nash,* and the Honorable William L. Rhodes, Jr. was the trial judge. In dismissing the out-of-state service of a Summons and Complaint in a tort action which was unrelated to a commercial transaction, he said:

"There is not the slightest inference in the Title of Act 1065 that its procedural provisions embrace service outside the state in a tort action where the tort sued upon is completely divorced from a commercial transaction, contract or document. Admittedly, the word 'procedure' is a broad one. The Title to Act 1065, however, expressly limits the procedure contemplated to 'court actions involving such transactions, contracts or documents.' That the term 'such transactions' refers to commercial transactions is obvious since the commerial transactions are the only transactions mentioned in the title. . . ."

In the other lower court case of *Byrd v. Melton,* Judge Francis B. Nicholson patterned his order much after that

in *deLoach* and held that the word "procedure" and the term "such transactions" in the title of the Uniform Commercial Code were only in reference to commercial transactions and clearly not indicative of procedural provisions embracing service outside the state based on the commission of a tort or the owning of real property in South Carolina.

The South Carolina Uniform Commercial Code was approved May 5, 1966, and was Act Number 1065 with the title thereof as hereinbefore quoted. The General Assembly decided to include in the preamble a Background and Introduction which, in part, is as follows:

"The basic premise on which the Uniform Commercial Code is based is that a 'commercial transaction' is a single subject of the law, notwithstanding its many facets, involving the sale of and payment for goods. * * *

"The basic objective of the Code is to bring all of these phases under one statute and to simplify, clarify, modernize and make uniform this law. The physical arrangement is to treat these various phases under eight separate articles. * * *

"* * * For the first time the Code affords the opportunity of integrated coverage whereby the rules are written with regard to the interrelation between the many aspects of commercial transactions."

The rulings of unconstitutionality in the cases above referred to prompted the legislature to reenact Part 8 of Article 2 of the Uniform Commercial Code embracing Section 10.2-803(1)(c). The reenactment was by Act No. 1343, 57 Stats. at page 2518, the title thereof being:

"An Act To Reenact Part 8 Of Article 2 Of Act 1065 Of 1966, Relating To The Uniform Commercial Code, So As To Make The Provisions Of Part 8, Which Relates To Certain Definitions, Personal Jurisdiction Based Upon Enduring Relationship, Personal Jurisdiction Based Upon Conduct, Provision For Service Outside The State And To State That Other Bases Of Jurisdiction Shall Be Unaffected,

To Establish A Manner And Proof Of Service, To Establish Individuals Eligible To Make Service, To Establish Individuals To Be Served And To Provide That Other Provisions Shall Remain Unaffected."

The reenacted Statute contained a preamble as follows:

"Whereas, Part 8 of Article 2 of Act 1065 of 1966 was added to the act by amendment from the floor during its debate and passage in the General Assembly and the amendment was not reflected in the title of the act and has been held in the circuit courts of the State to be invalid because the amendment did not meet the requirements of Section 17 of Article III of the Constitution of this State which states 'Every act or resolution having the force of law shall relate to but one subject and that shall be expressed in the title'; and

"Whereas, in order to make the provisions of Part 8 of Article 2 valid, the members of the General Assembly believe that Part 8 of Article 2 as reenacted herein shall cure any constitutional invalidity and that after passage of this act no constitutional question shall attach to the provisions thereof."

There can be no doubt but that the General Assembly intended to cure any constitutional invalidity of Section 10.2-803(1)(c) of Act No. 1065. The question for decision is whether Act No. 1343 is violative of Article III, Section 17 of the Constitution, and, if not, did it cure the constitutional defect in Act No. 1065.

In the case of *Colonial Life & Accident Ins. Co. v. S. C. Tax Commission*, 233 S. C. 129, 103 S. E. (2d) 908, we stated that the purpose of Article III, Section 17 of our Constitution is:

"to prevent the General Assembly from being misled into the passage of bills containing provisions not indicated in their titles, and to apprise the people of the subject of proposed legislation and thus give them opportunity to be heard

if they so desire. Accordingly, while it is to be construed with great liberality so as not to embarrass or obstruct needed legislation, liberality of construction should not be extended to such a point as to foster the abuses which its provisions are designed to prevent."

We further said:

"It is true, of course, that the title of an act need not be a complete index of its contents, and that the constitutional mandate is satisfied where the title states the general subject and the provisions in the body of the act are germane thereto and provide the means, methods or instrumentalities for the accomplishment of the general purpose."

This section of the Constitution requires not only that the title to an act must contain one single general subject, but also that the provisions in the body of the act relate to that one single subject and be germane thereto. In *Douglass v. Watson,* 186 S. C. 34, 195 S. E. 116, quoting from 25 R. C. L. at page 848, we said:

"The topics in the body of the act should be kindred in nature and have a legitimate and natural association with the subject of the title, and if the provisions of the act itself cannot be fairly construed as embraced within the title of the act, then it is in conflict with the constitution."

Within the meaning of Article III, Section 17 of the Constitution, that no act shall contain more than one subject, the "subject" of an act is regarded as the matter or thing forming the groundwork of the act, or the chief thing or matter to which it relates and with which it deals. *Crouch v. Benet,* 198 S. C. 185, 17 S. E. (2d) 320. The General Assembly, in Act No. 1065, the Uniform Commercial Code, declared that "commercial transactions" are a single subject of the law and that the act would afford for the first time, integrated coverage regarding the many aspects of commercial transactions.

The action set forth in the respondent's complaint is one in tort for the alienation of the affections of her husband

by the appellant. *Fennell v. Littlejohn,* 240 S. C. 189, 125 S. E. (2d) 408. The respondent admits that such an action is not one that involves a commercial transaction.

It is apparent to me that Section 803 of Part 8, "Further Remedies", under Article 2, "Sales", of the Uniform Commercial Code was an adoption of Section 1.3 of the Uniform Interstate Procedure Act. 24 A. L. R. (3d) 554.

It is the position of the respondent that Act No. 1343, which reenacted Section 10.2-803, effectively cured any constitutional invalidity found in Act No. 1065. It is further contended that Act No. 1343 established a procedural method which allows a South Carolina court to exercise personal jurisdiction of a nonresident defendant in connection with a tort claim even though it does not relate to a commercial transaction. I do not agree.

The reenacted Section, 10.2-803(1)(c), is not germane to a commercial transaction, nor did the tortious conduct of the appellant arise from any commercial transaction or involve in any way the transactions, contracts, or documents contemplated in the Uniform Commercial Code. The cited section is effective so long as it has a legitimate and natural association with a commercial transaction, which was the subject of the original act. However, this section could not be applied to tortious conduct which was wholly unrelated to a commercial transaction, because such application would have no natural association with the single general subject embraced in the title and therefore would be violative of Article III, Section 17 of the Constitution. Assuming that Act No. 1343 effectively changed the title to Act No. 1065 to include jurisdiction of nonresidents in tort actions unrelated to commercial transactions, the title to the act then would contain two subjects, and this would be violative of Article III, Section 17 of the Constitution.

If the General Assembly intended to enact a general long-arm statute, it would have been appropriate to do so

in an act separate and apart from the Uniform Commercial Code under an appropriate title which would obviate any question as to whether such violated Article III, Section 17 of the Constitution.

The judgment of the lower court holding that the appellant was subject to the jurisdiction of the courts of this State, in my opinion, should be reversed, and this case remanded thereto for an appropriate order dismissing the purported service of process.

LITTLEJOHN, J., concurs.