19945

William B. PEELER, Plaintiff, v. SOUTH CAROLINA HELICOPTERS, INC., et al., Defendants, of whom South Carolina Helicopters, Inc., is, Respondent, and R. J. Enstrom Corporation is, Appellant.

(211 S. E. (2d) 344)

*Messrs. Nexsen, Pruet, Jacobs & Pollard,* of Columbia, *for Appellant,*

*Messrs. Whaley, McCutchen & Blanton,* of Columbia, for Respondent,

January 16, 1975.

LITTLEJOHN, Justice:

We are called upon to determine whether the defendant-appellant R. J. Enstrom Corporation, a corporation chartered under the laws of the State of Michigan, and not domesticated in South Carolina, is subject to the jurisdiction of the South Carolina courts such that it may be sued in this State.

The question, as taken from appellant's brief, is as follows "Did Appellant [Enstrom] have sufficient contacts with the State of South Carolina to sustain service of process upon it herein without offending 'traditional notions of fair play and substantial justice'?"

The lower court held that Enstrom was subject to the jurisdiction of our courts. Enstrom has appealed, alleging error.

## PRIOR LITIGATION

Initially, plaintiff (and his wife) commenced an action against Enstrom in the United States District Court in South Carolina to recover damages allegedly sustained in the crash of a helicopter. Jurisdiction was contested by Enstrom and the District Court quashed service and dismissed the suit on the ground that Enstrom did "not have the minimum contacts necessary to warrant this [Federal] Court in extending its jurisdiction in the present case." South Carolina Helicopters, Inc., a defendant in this case, was not a party to the United States District Court action.

## THE PRESENT LITIGATION

Thereafter, plaintiff commenced this action against the defendant South Carolina Helicopters, Inc. (from which company the helicopter was purchased by the plaintiff) and against Marlin Rockwell Corporation, a Division of T. R. W., Inc., the manufacturer of parts alleged to be defective. Recovery is sought on the theory of negligence, breach of warranty, and strict liability.

Helicopters, Inc., after answering, moved to join Enstrom as a defendant and to amend its answer to include a cross-action seeking indemnity against Enstrom in the event of recovery by the plaintiff.

Enstrom appeared specially for the purpose of contesting the jurisdiction of the state courts as to its person, and filed a motion to quash service upon it and to dismiss it from the action on the ground that it "is neither subject to the jurisdiction of the Court nor amenable to service of process emanating from the State."

The motion was heard before the Honorable John Grimball, Resident Circuit Judge, who by his order denied the motion.

## THE FACTS

We proceed to review the facts in the light of the stated question. Enstrom manufactured the helicopter (in which plaintiff is alleged to have suffered damages) and initially sold it to a party in the State of Maryland. It crashed and was damaged, and was then purchased by the respondent Helicopters, Inc. Helicopters, Inc. took the helicopter to Enstrom's Michigan plant, where it was repaired. The work was performed by employees of Enstrom, along with the president of Helicopters, Inc., and one Voight Corley. Enstrom invoiced Helicopters, Inc. for both the replacement parts ($19,634.22) and the labor its employees supplied ($712.50). Enstrom certified the helicopter as "airworthy". Thereafter, on July 31, 1971, at Saluda, South Carolina, the helicopter crashed again while being piloted by Lester Hembel, President of Helicopters, Inc. At the time, William B. Peeler, plaintiff, who had purchased the helicopter, was riding as a passenger and was injured when the helicopter lost power and crashed.

Enstrom has no offices, bank accounts, or employees in South Carolina, and it asserts that it has no "network of customers" that it systematically services. Enstrom maintains that its random visits to South Carolina were in no way connected to the crash of the helicopter, and argues that the small business transactions with respondent were insufficient to constitute "doing business" in South Carolina.

It is well settled that a finding of the lower court that a defendant was transacting business in South Carolina to the extent necessary to subject it to the jurisdiction of the courts of this State is binding upon us unless the finding is without support in the evidence, or the finding is manifestly influenced or controlled by error of law. *Thompson v. Ford Motor Co.,* 200 S. C. 393, 21 S. E. (2d) 34 (1942); *Jones v. General Motors Corp.,* 197 S. C. 129, 14 S. E. (2d) 628 (1941); *Carolina Boat & Plastics Co. v. Glascoat Distributors, Inc.,* 249 S. C. 49, 152 S. E. (2d)

352; West's South Carolina Digest, Appeal and Error,— 1010(1).

There is little conflict of substance in the evidence. It is certainly susceptible of more than one reasonable inference, and we do not think it can be soundly held that Judge Grimball's findings in the court below are unsupported by the evidence, nor do we perceive wherein any of his findings or conclusions were influenced by error of law. From his order we find the following:

"As to the specific instances and occasions when Enstrom had business contacts in South Carolina, the following is taken *verbatim* from the Hembel affidavit:

"That on the following instances and occasions representatives of R. J. Enstrom Corporation came to South Carolina in connection with its business or promoting its business interests as follows:

'(a) Andy Aastad, vice president, marketing, of R. J. Enstrom Corporation came to Charleston, South Carolina on about May 20, 1969 to demonstrate an Enstrom F-28A helicopter for police and a television station. He also conferred with affiant on that occasion.

'(b) Robert Dorsey, a field service representative of R. J. Enstrom Corporation, visited the undersigned approximately in May 1969 and October 1969.

'(c) In 1971 a meeting with F. Lee Bailey, president of R. J. Enstrom Corporation, and affiant was held in Charleston, South Carolina to discuss the possibility of South Carolina Helicopters, Inc. obtaining an Enstrom dealership in South Carolina.

'(d) In 1971, some time after July 31, 1971, Mike Brooks, factory service representative of R. J. Enstrom Corporation, came to Saluda, South Carolina and inspected the helicopter wreckage and, on information and belief, the site of the crash.

'(e) On information and belief, in or about March 1972, Mike Meger, vice president of R. J. Enstrom Corporation, was in Greenville, South Carolina to demonstrate and F-28A helicopter.

'(f) On other instances and occasions, the exact dates and identities of the persons not being now known, inasmuch as there was no reason to record same, representatives of R. J. Enstrom Corporation visited affiant at the offices of South Carolina Helicopters, Inc. in Saluda, South Carolina.' "

Hembel, president of Helicopters, Inc., averred that "for a number of years prior to July 31, 1971, South Carolina Helicopters, Inc., had purchased helicopter parts from R. J. Enstrom Corporation on an open account, at times showing a debit balance and at other times showing a credit balance." He further said that he had received brochures and a maintenance manual and other promotional material from time to time. And also, that he and Voight Corley had been certified by Enstrom as qualified to perform work on, or service Enstrom helicopters. He paid the labor charges and paid for parts, including a new engine, rotor blades, and a new belt drive assembly, necessary to complete the repairs of the "crashed" helicopter.

In *Boney v. Trans-State Dredging Co.*, 237 S. C. 54, 115 S. E. (2d) 508 (1960), this Court established four considerations which are to be used in determining whether a foreign corporation had sufficient contacts in the state to confer jurisdiction:

(1) the duration of the corporate activity in the state;

(2) the character of the corporate acts;

(3) the circumstances of the corporate acts; and

(4) the inconveniences of the parties in conferring or refusing to confer jurisdiction over the nonresident corporation.

In the case at bar, appellant's activities could not be classified as systematic and continuous. However, by its own admission, it made five or six promotional visits in South Carolina prior to the accident. It cannot be doubted that appellant's promotional efforts created in part, or in whole, the business activities between Enstrom and Helicopters, Inc. It is also significant that these promotional activities were conducted over a six-year period.

The circumstances of appellant's acts are also significant in the determination of jurisdiction. Enstrom manufactured the helicopter, assisted in its repair (cost over $20,000), and then certified it as airworthy. It is logical to conclude that the repair work and certification were done with the knowledge, either actual or constructive, that the helicopter would return to South Carolina. Further, it is of some significance that, after the crash, appellant's representative came to South Carolina to inspect the wrecked helicopter and crash site.

The inconvenience to the parties, while not alone controlling, plays a part in the determination of jurisdiction. The accident occurred in South Carolina, and therefore the witnesses and the scene of the accident are in this forum. To require Helicopters, Inc. (or Peeler) to go to Michigan to bring this suit seems to be a greater inconvenience than to require appellant, who has periodically come into this State over the years, to come to South Carolina.

Conferring jurisdiction over Enstrom does not offend the "fair play and substantial justice" concept of *International Shoe v. Washington*, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). The nature and quality of appellant's contacts were sufficient to hold it amenable to process in this State without violating due process. The work-product of Enstrom cannot be said to have ended up in South Carolina merely as a result of "channels of trade." See *Phillips v. Knapp-Monarch Co.*, 245 S. C. 383, 140 S. E. (2d) 786 (1965).

Under the authorities, the facts disclosed by the record, and the inferences reasonably deducible therefrom, we conclude that Enstrom had sufficient contacts with this State that the maintenance of this action does not offend traditional notions of fair play and substantial justice, and that there was no error on the part of the court in denying Enstrom's motions.

The ruling of the lower court, and our affirmance, is consistent with our holdings in the recent case of *Triplet v. R. M. Wade and Company,* 261 S. C. 419, 200 S. E. (2d) 375, and the case of *Thompson v. Hofmann,* S. C., 210 S. E. (2d) 461, filed December 4, 1974.

Affirmed.

Moss, C. J., concurs.

LEWIS and BUSSEY, JJ., and NESS, Acting Associate Judge, concur in result.

BUSSEY, Justice (concurring):

I concur in the result reached by Mr. Justice Littlejohn in his opinion. In *Triplett v. R. M. Wade and Company* (1973), 261 S. C. 419, 200 S. E. (2d) 375, in holding a foreign corporation amenable to the process of this State, we noted the clear judicial and legislative trend toward a broadened, liberal concept of what constitutes transacting business in the State of South Carolina as a basis for jurisdiction of a foreign corporation. In *Thompson v. Hofmann,* S. C., 210 S. E. (2d) 461, filed December 4, 1974, we upheld the constitutionality of sections 10.2-801 through 10.2-809, 1962 Code of Laws (Supp. 1973); Act No. 1065, 54 Stat. 4027 (1966), as reenacted by Act No. 1343, 57 Stat. 2518 (1972). It seems clear to me that by virtue of these code sections alone, and without reference to any of our prior decisions construing and applying earlier long-arm statutes, the lower court properly held the appellant to be, under the facts of this case, subject to the jurisdiction of the courts of South Carolina.

LEWIS, J., and NESS, Acting Associate Judge, concur.