0260

Mary R. KRELL, Administratrix of the Estate of Roy A. Krell, Sr., Respondent, v. The CAROLINA BANK, Aberdeen, North Carolina, Appellant.

(320 S. E. (2d) 491)

Court of Appeals

*Thomas B. Bryant, III*, and *Marty Salley McGee*, of *Bryant, Fanning & Yarborough*, Orangeburg, *for appellant*.

*Charlton B. Horger* and *Robert R. Horger*, of *Horger, Horger & Barnwell*, Orangeburg, *for respondent*.

Heard May 16, 1984.

Decided Sept. 11, 1984.

SHAW, Judge:

This is an appeal from an order which determined South Carolina courts have in personam jurisdiction over a bank organized and existing under the laws of North Carolina. We affirm.

The respondent, Mary R. Krell, is the administratrix of the estate of her husband, Roy A. Krell, Sr. Prior to his death, Mr.

Krell, a licensed realtor, sold a tract of land in Orangeburg County, South Carolina, for which $7,200 down payment was paid by check drawn on the appellant—Carolina Bank (its Aberdeen, North Carolina branch). Carolina Bank stopped payment on the check. This suit alleges the stop payment order was effectuated in contravention of pertinent statutory requirements and that Carolina Bank fraudulently represented payment on the check had been properly stopped.

In response to the lawsuit, Carolina Bank made a special appearance to contest jurisdiction. In compliance with an order to produce documents showing the extent of business contacts in South Carolina, Carolina Bank produced documents from its main office and numerous branches. It appears the extent of Carolina Bank's business contacts in South Carolina consists of one mortgage, five security agreements, thirty four depositors, eight loans, and one contract. At least eight branch banks reported no contacts in South Carolina.

The bank has a participation and loan servicing agreement with First Federal Savings & Loan Association of Greenville, South Carolina. Under this agreement, Carolina Bank sells and First Federal purchases a 90% participating interest in mortgages Carolina Bank makes on properties located in North Carolina to North Carolina residents.

The circuit judge ruled because of Carolina Bank's substantial number of customers in South Carolina and its participation and loan servicing agreement with First Federal, Carolina Bank is doing business in South Carolina as defined in Section 36-2-803 of the 1976 South Carolina Code of Laws and is subject to the jurisdiction of South Carolina courts.

A finding by the circuit court that a nonresident corporate defendant was transacting business in South Carolina to the extent necessary to subject it to the jurisdiction of the courts of this state is binding on this court unless the finding is without support in the evidence or manifestly influenced or controlled by error of law. *Nucor Corporation v. Faneuil Construction Inc.*, 264 S. C. 458, 215 S. E. (2d) 634 (1975); *Jacobs v. Association of Independent Colleges and Schools*, 265 S. C. 459, 219 S. E. (2d) 837 (1975).

In deciding whether South Carolina has personal jurisdiction over a foreign corporation, jurisdiction must exist under the law of South Carolina and the exercise

of jurisdiction must not violate due process. *Duplan Corp. v. Deering Milliken, Inc.*, 334 F. Supp. 703 (D.S.C. 1971).

Section 36-2-803(1) provides:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's (d) causing tortious injury or death in this state by an act or omission outside this state if he regularly *does* or solicits *business*, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state. (emphasis added).

Jurisdiction under this statute has been extended to the outermost limit permissible under the due process clause. *Hardy v. Pioneer Parachute Co.*, 531 F. (2d) 193 (4th Cir. 1976); *Triplett v. R. M. Wade and Co.*, 261 S. C. 419, 200 S. E. (2d) 375 (1973).

Krell claims Carolina Bank is "doing business" in South Carolina within the meaning of Section 36-2-803(1). *See Bass v. Harbor Light Marina, Inc.*, 372 F. Supp. 786 (D.S.C. 1974). No universal formula has been, or is likely to be, devised for determining what constitutes doing business by a foreign corporation within a state in such sense as to subject it to the jurisdiction of the courts of a state. The question must be resolved upon the facts of the particular case. *Boney v. Trans-State Dredging Co.*, 237 S. C. 54, 115 S. E. (2d) 508 (1960).

Since Mrs. Krell is the party seeking to invoke the jurisdiction of South Carolina's courts, she has the burden of presenting facts sufficient to establish jurisdiction. *Yarborough & Co. v. Schoolfield Furniture Industries*, 275 S. C. 151, 268 S. E. (2d) 42 (1980); *McComb v. Tiburon Aircraft, Inc.*, 276 S. C. 683, 281 S. E. (2d) 482 (1981). We feel she has carried this burden. Carolina Bank has accounts with three large retail chain stores of different natures operating in South Carolina—Golden Coral Stores, Pantry, Inc. Stores and Mack Stores. These accounts are not onetime transactions such as mortgages and security agreements but are ongoing, continuous relationships with business in South Carolina. Further, Carolina Bank has contracted directly with a South Carolina corporation. This contract with First Federal

involves *all* of the mortgages held by Carolina Bank on North Carolina properties owned by North Carolina residents. This contract is not the result of a fortuitous contact with South Carolina; it came through the deliberate actions of Carolina Bank in taking on a South Carolina partner in its mortgage business. In addition to these retail accounts and the mortgage participation contract, there are numerous other minor contacts with this state such as loans, security agreements, and various depositors.

This determination does not end the analysis. It still must be decided whether Carolina Bank's contacts with South Carolina are of such enduring nature, so fairly extensive that imposing the burden of defending a suit here does not offend the traditional due process notions of fair play and substantial justice. *David v. National Lampoon*, 432 F. Supp. 1097 (D.S.C. 1977); *Parker v. Williams & Madjanik, Inc.*, 270 S. C. 570, 243 S. E. (2d) 451 (1978); *International Shoe Co. v. Washington*, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

In determining whether a foreign corporation has sufficient contacts with South Carolina to confer jurisdiction, four considerations are used:

(1) the duration of the corporate activity in the state;
(2) the character of the corporate acts;
(3) the circumstances of the corporate acts; and
(4) the inconvenience of the parties in conferring or refusing to confer jurisdiction over the nonresident corporation.

*Boney v. Trans-State Dredging Co., supra; Peeler v. S. C. Helicopters, Inc.*, 263 S. C. 487, 211 S. E. (2d) 344 (1975).

Carolina Bank's business activities in South Carolina are of a continuous nature. The servicing of the retail store accounts involves a series of open ended transactions which will endure until the banking relationship is terminated by one party. Similarly, the contract with First Federal will continue until all mortgages are paid in full. Both the retail accounts and the contracts are of an enduring nature.

In entering into these continuing business relationships, Carolina Bank deliberately chose its relationship with South Carolina. While the retail accounts may or may not have been solicited by Carolina Bank, once the

accounts were opened, it became foreseeable that Carolina Bank may one day be haled into court here. This foreseeability and the non-fortuitous nature of the contract are circumstances that weigh in favor of South Carolina's exercising of jursidiction. *World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 100 S. Ct. 559, 62 L. Ed. (2d) 490 (1980).

Affirmed.

BELL and CURETON, JJ., concur.